MICHAEL AMMIRATA ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF REDDING ET AL.
(AC 20640)

Foti, Flynn and Peters, Js.

Argued February 22—officially released September 18, 2001

*Paul L. Bollo,* for the appellants (plaintiffs).

*Peter S. Olson,* with whom was *Gerald C. Pia, Jr.,* for the appellees (named defendant et al.).

### Opinion

FLYNN, J. The plaintiffs, Michael Ammirata and Margaret Ammirata, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning board of appeals of the town of Redding (zoning board), which sustained the issuance of a cease and desist order by the Redding zoning enforcement officer, the defendant Aimee Pardee (zoning officer).[1]

On appeal, the plaintiffs claim that (1) the Redding zoning commission (zoning commission) is barred by the principles of res judicata and collateral estoppel from asserting zoning violations that it has litigated or had the opportunity to litigate in a prior zoning action against the plaintiffs, (2) the zoning commission is pro-

---

[1] In their appeal to the trial court from the zoning board's decision, the plaintiffs also named as defendants Edward J. Fenwick and Miriam J. Messe, whose property abuts that of the plaintiffs. On appeal, Fenwick and Messe have adopted the brief that was filed by the zoning board and the zoning officer.

hibited from asserting against them a 1975 setback regulation that is not part of the current regulations that were adopted in 1986, (3) the application of a zoning regulation requiring a land management plan for a prior nonconforming use violates General Statutes § 8-2 (a) and § 5.17 of the Redding zoning regulations, which protect nonconforming uses, (4) General Statutes § 19a-341, concerning the right to farm, bars the zoning commission from requiring a management plan for farm property and (5) the doctrine of municipal estoppel prohibits the town of Redding from enforcing its regulations. We affirm the judgment of the trial court.

We glean the following facts and procedural history from the court's memorandum of decision and from the record. The plaintiffs own a 2.56 acre parcel at 145 Mountain Road (property) in Redding. The plaintiffs occupied the premises in 1978 and acquired title to the property on July 20, 1982. The property is located in a R-2 zone, formerly known as "Residential and Farming District A."

On October 21, 1998, the zoning officer wrote to the plaintiffs, requesting that they file a land management plan and that they observe the twenty-five foot setback of paddocks mandated by the zoning regulations. The plaintiffs did not submit a management plan. On February 11, 1999, the zoning officer issued a cease and desist order to the plaintiffs for the following alleged violations of the zoning regulations. First, the paddocks on the north end of their property did not conform with the twenty-five foot setback requirement and, second, the plaintiffs had failed to submit a management plan to the zoning commission.

The plaintiffs on February 25, 1999, filed an appeal with the zoning board from the cease and desist order. On March 16, 1999, the zoning board denied their appeal, and upheld the cease and desist order. The

plaintiffs then appealed to the trial court from that decision. On July 23, 1999, the court issued a permanent injunction against the plaintiffs, enjoining them from permitting any of the following conditions to exist on their property: (1) "the simultaneous maintenance of more than nine horses on the premises, unless the [plaintiffs] shall apply for and receive approval for a land management plan pursuant to the zoning regulations of the town of Redding permitting more than such number of horses; for the purposes of this injunction only, the [plaintiffs] shall be considered to have maintained a particular horse on the premises if such horse remains on the premises overnight," and (2) "the existence of any signs on the premises except as expressly permitted by the zoning regulations of the town of Redding."

On January 7, 2000, the court upheld the decision of the zoning board, ordering the plaintiffs to submit a land management plan within forty-five days of the date of that judgment, and to cease and desist from the violation of the twenty-five foot setback regulation. On January 31, 2000, the plaintiffs filed a petition for certification to this court, which was granted. The plaintiffs subsequently filed this appeal.

In reviewing the actions of a zoning board, we note that local zoning boards are vested with a liberal discretion. *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 695, 626 A.2d 698 (1993). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269–70, 588 A.2d 1372 (1991). "A trial court must . . . review the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." *Wnuk* v. *Zoning Board of Appeals*, supra, 695–96. "It is well settled that courts

are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . ." (Internal quotation marks omitted.) *Conetta* v. *Zoning Board of Appeals*, 42 Conn. App. 133, 137–38, 677 A.2d 987 (1996).

Because the trial court, in this case, has made conclusions of law, our review is plenary. *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 139, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999); see also *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999). "[W]e must decide whether the conclusions are legally and logically correct and supported by the facts in the record." *Fleet National Bank* v. *Zoning Board of Appeals*, supra, 139.

I

The plaintiffs first claim that the zoning commission is barred by the principles of res judicata and collateral estoppel from asserting zoning violations that it has litigated or had the opportunity to litigate in a prior zoning action against them. Specifically, the plaintiffs assert that the stipulated judgment in the prior zoning action requires them to submit a land management plan *only if* they maintain more than nine horses on their property. Additionally, they assert that the alleged setback violation should have been raised in the prior zoning action and, because it was not, the zoning commission is thereby precluded from raising that claim in the present action. We do not reach the merits of this claim due to an inadequate record.

The court's memorandum of decision is silent as to the arguments concerning res judicata and collateral estoppel,[2] and the plaintiffs did not seek an articulation

---

[2] In its memorandum of decision, the court did state the following: "While the town [of Redding] may not have alleged a violation of the setback provision during legal action initiated against the plaintiffs . . . a delay in enforcing a regulation will not estop a municipality from exercising its police powers. *Ackley* v. *Kenyon*, 152 Conn. 392, 397 [207 A.2d 265] (1965)." That

from the court in that regard. It is the appellant's duty to furnish this court with a record that is adequate to afford review. See Practice Book § 60-5. Absent an articulation of the court's reasoning, we are unable to review the plaintiffs' claim.

## II

The plaintiffs' second claim is that the zoning commission[3] is prohibited from enforcing against them a 1975 setback regulation that is not part of the current regulations that were adopted in 1986. They further claim that the paddock located on the north side of their property predates the adoption of the 1975 regulation, constitutes a prior nonconforming use and is, therefore, not subject to the regulations. We disagree.

Section IV H (2) of the 1975 zoning regulations established a setback requirement of twenty-five feet for "corrals, runs or similar enclosures."[4] On the other hand, § 5.14.6 of the 1986 zoning regulations provides that animal enclosures must be set back at least fifty feet from all watercourses, and side and rear lot lines.[5]

---

statement coupled with the reference to *Ackley,* however, refers to the doctrine of municipal estoppel, not to the principles of res judicata or collateral estoppel.

[3] It should be noted that the plaintiffs did not name the zoning commission as a defendant in this action. We nonetheless address the plaintiffs' claim regarding the zoning commission because the zoning officer is a party to this appeal and has the authority to enforce regulations. General Statutes § 8-12 specifically permits a zoning officer to enforce regulations.

[4] Section IV H (2) of the 1975 Redding zoning regulations provides: "Animal shelters, coops and similar structures shall not be located closer than fifty (50) feet from an adjacent property line. No corrals, runs or similar enclosures shall be located closer than twenty-five (25) feet from adjacent property lines."

[5] Section 5.14.6 (a) of the 1986 Redding zoning regulations provides in relevant part: *"Animal Barns and Pens*—Barns, coops, stables, barnyards, exercise pens, riding rings, and other structures for housing or close confinement of animals or birds shall be set back at least fifty (50) feet from all watercourses and from all side and rear lot lines; except where a Land Management Plan is required, the Commission may require up to 100 feet of setback, or intensive screening, or both, where necessary to protect adjoining property. . . ."

The court found that no direct evidence was presented to establish the existence of the plaintiffs' paddock prior to the adoption of the 1975 regulation. Rather, the record supported the zoning board's finding that the paddock was built after the 1975 regulation was adopted. As such, the plaintiffs do not have a nonconforming use that would exempt them from conforming to the 1975 regulation. They do not need to comply with the 1986 regulation requiring a fifty foot setback because the plaintiffs' use became nonconforming subsequent to the twenty-five foot regulation but prior to the fifty foot regulation. Accordingly, the plaintiffs must comply with the 1975 regulation requiring them to abide by a twenty-five foot setback of enclosures.

### III

The plaintiffs' third claim is that the application of a zoning regulation requiring a land management plan for a prior nonconforming use violates General Statutes § 8-2 (a) and § 5.17 of the zoning regulations, which protect nonconforming uses. That claim is without merit.

We begin our analysis by reviewing the relevant parts of the statute and regulation cited by the plaintiffs. Section 8-2 prohibits a municipality from preventing the continuance of a nonconforming use.[6] Section 5.17 of the zoning regulations provides in relevant part: "If a lot, building, structure, or use of a site was lawfully in existence on the effective date of these Regulations [February 1, 1986] (or on the date of an amendment

---

[6] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality . . . buildings and other structures . . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. . . ."

thereto), to the extent that such lot, building, structure or use did not then conform to these Regulations the same is deemed legally *nonconforming . . . .*" (Emphasis in original.)

Additional regulations that are instrumental in our resolution of this issue are zoning regulations §§ 5.14.2 and 5.14.3. The land management plan regulation, specifically § 5.14.2, requires that a management plan be approved by the zoning commission for animal raising operations where the number of horses, among other animals, exceeds the stated limit of two horses per lot and one horse per each 0.8 acre of site area. Section 5.14.3 permits the zoning commission to approve a management plan only when no adverse impact will result.[7]

Our case law makes clear that generally a municipality can regulate a nonconforming use.[8] "Regulation of a nonconforming use does not, in itself, abrogate the

[7] Section 5.14.3 of the Redding zoning regulations provides in relevant part: "The Land Management Plan shall consist of a map of the site and its immediate environs, showing the extent of the proposed operations, approximate slopes and drainage patterns, general location of streams, wetlands, buildings, [fence lines] and roadways, and shall be accompanied by a written description which explains in detail how the operations shall be conducted, parties responsible, and demonstrates that sound land management practices will be adhered to consistent with Section 5.3 hereof. A public hearing is not required; such plan may be reviewed at any Commission meeting. . . . *Where it is satisfied [that] no adverse impact will result to the site or adjacent area, the Commission may approve, or modify and approve with conditions required to protect the environment of the site, such plan at any regular meeting. . . .*" (Emphasis added.)

[8] "A nonconforming use is merely an 'existing use' the continuance of which is authorized by the zoning regulations. . . . To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. . . . [T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." (Citations omitted; internal quotation marks omitted.) *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 644–45, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001).

property owner's right to his nonconforming use. . . . A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid. *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979); *Lampasona* v. *Planning & Zoning Commission*, 6 Conn. App. 237, 239, 504 A.2d 554 (1986)." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 242–43, 662 A.2d 1179 (1995).

Here, the plaintiffs have appealed from the decision of the court that upheld the right of the zoning board to require the plaintiffs to file a management plan for the continued operation of a horse farm. The record is clear that the plaintiffs' maintenance of nine horses on their property predated the adoption of the management plan regulation and, thus, constitutes a nonconforming use. The town of Redding has the right, under its police powers, to require a land management plan although it cannot attenuate the scope of the plaintiffs' nonconforming use. The town of Redding has not sought to diminish the lawful, nonconforming utilization of the property, but concedes that it cannot prohibit the continuation of a valid nonconforming use. The plaintiffs argue that because of the nonconforming use of their land, they should be exempted from that form of regulation. We disagree, and determine, as did the trial court,[9] that the plaintiffs are required to file a land

_____

[9] In its memorandum of decision, the court stated: "[T]he recognition of the rights of a property owner to use his property consistent with a valid, nonconforming use does not prohibit the Redding zoning commission from adopting reasonable regulations to protect the public health, safety and welfare.

"Such regulations are applicable to both conforming and nonconforming uses of land. *Russo* v. *East Hartford*, 179 Conn. 250, 257 [425 A.2d 1282]

management plan with the zoning commission and that, by doing so, their nonconforming use will not be lost.

## IV

The plaintiffs' fourth claim is that § 19a-341 bars the zoning commission from requiring a land management plan for farm property. The plaintiffs maintain that under § 19a-341, notwithstanding any municipal ordinance, their farm cannot constitute a nuisance with respect to, inter alia, odor, noise and dust. They further claim that the requirement of a management plan must be consistent with § 5.3[10] of the zoning regulations, which sets out standards for, inter alia, odor, noise and dust. The plaintiffs contend, therefore, that the requirement of a management plan "would impose upon [them] strict limits with respect to these matters which, if violated, would constitute a public nuisance in contravention of [§ 19a-341]." We disagree.

Section 19a-341 protects certain agricultural and farming operations from being deemed nuisances. That statute provides in relevant part that "[n]otwithstanding any general statute or municipal ordinance or regulation pertaining to nuisances to the contrary, no agricultural or farming operation, place, establishment or facility, or any of its appurtenances, or the operation thereof, shall be deemed to constitute a nuisance, either public

(1979) [cert. denied, 445 U.S. 940, 100 S. Ct. 1334, 63 L. Ed. 2d 773 (1980)]; *Teuscher* v. *Zoning Board of Appeals*, 154 Conn. 650, 657 [228 A.2d 518 (1967)]."

[10] Section 5.3 of the Redding zoning regulations provides in relevant part: "Every use and activity shall be conducted in such manner that it is clearly compatible with the health, safety, welfare and property values of the community. . . ."

Section 5.3.1 of the Redding zoning regulations provides: "Any use which results in contamination of air, ground, water or the natural environment, beyond the specific limits prescribed below, is prohibited. Any use which is noxious by reason of emission odor, dust, gases, smoke, noise, vibration, light, radiation, or danger of explosion or other physical hazard is prohibited."

or private, due to alleged objectionable [odor, noise, dust, use of chemicals or water pollution] . . . ." General Statutes § 19a-341 (a).

The plaintiffs' argument misses the mark. First, while § 19a-341 may preempt municipal ordinances, it is limited to nuisance ordinances, which are not at issue in this case. Second, as the court properly concluded, the town of Redding exercises legitimate police powers with regard to § 5.3 of the zoning regulations and does not violate § 19a-341 because the plaintiffs' property has not been declared a nuisance. Accordingly, because § 19a-341 does not apply to the present circumstances, the plaintiffs' claim must fail.

V

The plaintiffs' final claim is that the doctrine of municipal estoppel prohibits the town of Redding from enforcing its regulations. The plaintiffs assert that the twenty-five foot setback regulation is unenforceable as to them because of various statements made by municipal officers and employees that the paddock was legally nonconforming and, thus, permissible. We disagree.

Two essential elements must be proven to establish municipal estoppel. First, "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief . . . ." (Internal quotation marks omitted.) *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 635, 646 A.2d 772 (1994). Second, "the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) Id. Municipal estoppel is invoked only (1) with great caution, (2) when the resulting violation has been unjustifiably induced by an agent who has authority to handle such matters and (3) in special circumstances where it would be highly inequitable or oppressive to enforce

the regulations. *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 354, 365 A.2d 1093 (1976). Generally, municipal estoppel *may not be invoked against a public agency* in the exercise of its governmental functions. *Bianco* v. *Darien*, 157 Conn. 548, 556, 254 A.2d 898 (1969); *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 501, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962). An exception to that rule exists, however, for the party claiming estoppel who would suffer a substantial loss as a result of the municipality nullifying the acts of its agents. *Dornfried* v. *October Twenty-Four, Inc.*, supra, 635.

The plaintiffs were required, therefore, to show that the agents of the town of Redding acted to induce their reliance and that the plaintiffs relied on the town's actions to their detriment to such an extent that enforcement of the town's zoning regulation would be "highly inequitable or oppressive." *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 732, 453 A.2d 1144 (1982).

The court, in regard to this claim, determined that no evidence had been presented to show that the paddock was constructed at the direction of any municipal officer or that the plaintiffs would suffer a hardship if the twenty-five foot setback requirement were enforced. The court further noted that "[a]t best, the comments and opinions of Redding officials indicate acquiescence to the location of the paddocks, or a belief arrived at without the benefit of a hearing, that the paddock area was legally nonconforming." The court properly found that those facts could not form the basis of a successful claim of municipal estoppel and, therefore, concluded that the plaintiffs had failed to sustain their burden of proving municipal estoppel.

We agree with the court's conclusion and determine that the plaintiffs have offered no evidence that they would suffer a substantial loss if the town of Redding

enforced the regulation. Likewise, there is nothing in the record to suggest that the enforcement of the twenty-five foot setback requirement would make it "highly inequitable or oppressive." Id. We conclude, therefore, that the plaintiffs did not establish the elements necessary for the invocation of the doctrine of municipal estoppel. Accordingly, the defendants are entitled to enforce the twenty-five foot setback regulation against the plaintiffs.

The judgment is affirmed.

In this opinion the other judges concurred.