PERRY TAYLOR ET AL. *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF
WALLINGFORD ET AL.
(AC 20448)

Lavery, C. J., and Spear and Flynn, Js.

Argued April 4—officially released September 18, 2001

*Leonard A. Fasano*, with whom, on the brief, was *Timothy J. Lee*, for the appellants (plaintiffs).

*Gerald E. Farrell, Sr.*, assistant town attorney, for the appellee (named defendant).

*Opinion*

LAVERY, C. J. The plaintiffs, Perry Taylor, Margaret Taylor and Tayco Corporation, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning board of appeals of the town of Wallingford (board),[1] upholding the action

---

[1] The plaintiffs also named as defendants the chairman of the board and the town clerk pursuant to General Statutes § 8-8 (e).

of the town's zoning enforcement officer, who issued a cease and desist order to the plaintiffs. On appeal, the plaintiffs claim that (1) the trial court improperly held that when the town of Wallingford (town) enacted zoning regulations making sand and gravel operations a permitted use in the plaintiffs' zoning district subject to a special permit, the plaintiffs' right to operate a sand and gravel mine on their property as a preexisting nonconforming use was extinguished, (2) the town zoning regulations are unconstitutional because they deprive the plaintiffs of their vested right in a preexisting nonconforming use of their property, and (3) the trial court improperly upheld the cease and desist order issued against the plaintiffs' use of their property as a sand and gravel mine merely because the plaintiffs' did not possess a special permit.[2] We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our consideration of this appeal. The plaintiffs are the owners of property located at 109

[2] As stated in their brief, the plaintiffs claim that: (1) the trial court improperly held that their right to operate a sand and gravel mine on their property as a preexisting nonconforming use was extinguished when the town enacted zoning regulations that made the use permitted but subject to a special permit; (2) the town zoning regulations are unconstitutional because they deprive the plaintiffs of their vested right in the preexisting nonconforming use of their property; (3) a preexisting nonconforming use should not lose its status as such merely because the use subsequently becomes permitted, but subject to a special permit; (4) the zoning enforcement officer improperly issued the cease and desist order against the plaintiffs' use of their property as a sand and gravel mine because they did not possess a special permit; (5) because they had a vested right in a preexisting nonconforming use of their property, they were not required to obtain a special permit; (6) the town could not order them to cease and desist the operation of their mine as a preexisting nonconforming use because there was no threat to the public health, safety and welfare; and (7) if the plaintiffs were required to obtain a special permit, the zoning commission could not deny the permit for reasons unrelated to the public health, safety and welfare. Because we find that the latter four issues are merely parts of the former three, we have restated them for convenience.

Hosford Street in Wallingford. Part of the property is located in an industrial zone, while the rest is located in a residential zone. Beginning in 1942 and continuing to the issuance of the cease and desist order that is the subject of this appeal, the property has been used by the plaintiffs and their predecessors in title for sand and gravel operations, which includes the screening, storing, excavating, stockpiling and selling of earth products, and which includes the sale of landscaping material. This use of the property by the plaintiffs' predecessors in title began prior to the town's adoption of its first zoning regulations, which took place in 1958.[3]

The plaintiffs assert, and the board concedes, that when the town chose to enact zoning regulations, the plaintiffs' use of their property for the operation of a quarry became a valid, preexisting nonconforming use. The plaintiffs continued to operate the quarry without any effort by the town to stop them from doing so for several decades thereafter.

In 1990, the town amended its zoning regulations to relax the prior categorical prohibition against the operation of quarries in residential zones by enacting a regulation permitting such use of property in a residential zone if the operator obtained a special permit. The plaintiffs sought and were granted such a permit in 1990, and thereafter renewed it on two subsequent occasions. The last renewal permit expired on June 8, 1998, at which time the plaintiffs did not seek a further renewal of their permit, but nevertheless continued their operation of the land as a quarry.

On June 11, 1998, the town's zoning enforcement officer issued a cease and desist order to the plaintiffs

---

[3] The board, in its brief, refers to 1955 as the year in which the town enacted its first zoning regulations. The plaintiffs, in their brief, refer to 1958 as the operative year. Because the trial court, in its memorandum of decision, stated that the institution of zoning in the town took place in 1958, we treat 1958 as the operative year.

ordering them to cease the operation of their quarry for the sole reason that they had failed to secure a renewal of their special permit. No other violation of any applicable zoning ordinance or regulation was alleged.

The plaintiffs appealed from the cease and desist order to the board, claiming that the expiration of their special permit notwithstanding, their use of the property as a sand and gravel mine was a preexisting nonconforming use and they, therefore, were not required to obtain a special permit. The town again conceded the plaintiffs' claim that their use of the property constituted a preexisting nonconforming use. The town claimed, however, and the board agreed, that by previously applying for and receiving special permits, the plaintiffs had waived their rights to the continued use of their property as a preexisting nonconforming use. The board thus denied the plaintiffs' appeal.

The plaintiffs thereafter appealed to the Superior Court pursuant to General Statutes § 8-8 (b).[4] The court dismissed the appeal, concluding that "the use at issue is not a prohibited use, but a permitted use, subject to regulation." The court explained that "[t]he scheme of regulation of the Wallingford zoning regulations clearly contemplated the conversion of a valid preexisting nonconforming use into a permitted use." The court also held that even if "the plaintiffs' use continues to be a valid, preexisting nonconforming use, this appeal still would fail" because "[n]onconforming uses are subject

---

[4] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

to regulation in the interest of public health, safety and welfare." We disagree with the former and agree with the latter reason given by the trial court for dismissing the plaintiffs' appeal.

I

The plaintiffs first claim that the trial court improperly held that their right to operate a sand and gravel mine on their property as a preexisting nonconforming use was extinguished when the town enacted zoning regulations that made the use permitted, but subject to a special permit. We agree.

We first state the applicable standard governing our review of the plaintiffs' claim. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 538, 738 A.2d 1157 (1999).

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. *Police Department* v. *State Board of Labor Relations*, [225 Conn. 297, 300, 622 A.2d 1005 (1993)]; *Crocetto* v. *Lynn Development Corporation*, 233 Conn. 376, 381, 612 A.2d 1212 (1992). . . . This case . . . presents a pure question of law, and therefore invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state

agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *Starr* v. *Commissioner of Environmental Protection*, 236 Conn. 722, 735–36, 675 A.2d 430 (1996).

The parties in this case do not disagree that the plaintiffs' use of their property for sand and gravel operations was a valid nonconforming use that predated the enactment of the town's first zoning laws. Even if this were not so, it could readily be inferred from the fact that, from the enactment of the town zoning laws in 1958 until 1998 when the cease and desist order giving rise to the present litigation was issued, the town's zoning officials made no effort to stop or otherwise hinder the plaintiffs' use of their property for sand and gravel operations, notwithstanding that the property was partly in a residential zone.

The trial court ruled that "[t]he scheme of regulation of the Wallingford zoning regulations clearly contemplated the conversion of a valid preexisting nonconforming use into a permitted use. . . . The court finds that the use at issue *is not a nonconforming use, but a permitted use requiring special permit.*" (Emphasis added.) The trial court's interpretation misses the mark by treating a nonconforming use as a transient permission, which becomes unnecessary and disappears if the municipality changes its zoning laws to make the use permissible with a special permit.

The right to continue an established nonconforming use of one's property is securely grounded, both in statutes and in previous decisions of this court and our Supreme Court. General Statutes § 8-2 provides that municipal zoning "regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulations. . . ."

"Where a nonconformity exists, it is a vested right which adheres to the land itself. And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use. 1 Anderson, American Law of Zoning (2d Ed.) § 6.37, p. 445. A vested right, unless abandoned, to continue the nonconforming use is in the land . . . . [T]he right to a nonconforming use *is a property right* and . . . any provision of a statute or ordinance which takes away that right in an unreasonable manner or in a manner not grounded on the public welfare is invalid. A lawfully established nonconforming use is a *vested right* and is entitled to constitutional protection." (Emphasis added; internal quotation marks omitted.) *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979); see also *Carbone* v. *Vigliotti*, 222 Conn. 216, 230, 610 A.2d 565 (1992); *Darien* v. *Webb*, 115 Conn. 581, 586, 162 A.2d 690 (1932).

"It is a fundamental zoning precept in Connecticut . . . that zoning regulations cannot bar uses that existed when the regulations were adopted. *Beckish* v. *Planning & Zoning Commission*, 162 Conn. 11, 16, 291 A.2d 208 (1971). . . . It is readily apparent that the rule concerning the continuance of a nonconforming use protects the right of a user to continue *the same use* of the property *as it existed before the date* of the adoption of the zoning regulations." (Emphasis added; internal quotation marks omitted.) *Cioffoletti* v. *Planning & Zoning Commission*, 24 Conn. App. 5, 8, 584 A.2d 1200 (1991).

Although, generally, the plaintiffs bear the burden of proving the existence of a nonconforming use, the board in this case has conceded that the plaintiffs' use of their property constituted a preexisting nonconforming use. The cases previously discussed, therefore, dictate that the plaintiffs have the right to continue the nonconforming use already established.

Once a nonconforming use is established, the only way it can be lost is through abandonment. The sale of the property will not destroy the right to continue in the nonconforming use. See *Petruzzi* v. *Zoning Board of Appeals*, supra, 176 Conn. 483–84. "General Statutes § 8-2 restricts the ability of a town to eliminate a nonconforming use through its zoning regulations." *DiBlasi* v. *Zoning Board of Appeals*, 224 Conn. 823, 831, 624 A.2d 372 (1993). "There is nothing in the zoning regulations . . . which gives the defendant commission any authority to require the discontinuance of a preexisting use of undisputed legality . . . ." *Beckish* v. *Planning & Zoning Commission*, supra, 162 Conn. 15.

*Cioffoletti* v. *Planning & Zoning Commission*, supra, 24 Conn. App. 8, supports the proposition that a special permit ordinance does not supersede an owner's property right under a preexisting nonconforming use. In that case, the Ridgefield planning and zoning commission made all preexisting nonconforming sand and gravel businesses subject to a special permit. The special permit procedure that the town implemented effectively put a halt to all sand and gravel operations within four years from the date of issuance of the permit. This court found that the procedure in effect violated General Statutes § 8-2, which dictates that "[s]uch regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulation. . . ."

The *Cioffoletti* court went on to say: "It is readily apparent that the rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations. *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981)." (Internal quotation marks omitted.) *Cioffoletti* v. *Planning & Zoning Commission*, supra, 24 Conn. App. 8.

The trial court in the present case found that the plaintiffs' nonconforming use "was transformed in 1988" by the adoption of the regulations requiring a special permit for such a use. The court held that "[a] permitted use is not a nonconforming use." The import of these two sentences is that the plaintiffs' former nonconforming use would no longer exist, thus leaving the plaintiffs with a permitted use, which is not a nonconforming use. Therefore, the plaintiffs would no longer have a nonconforming use. Because, by the court's own reasoning, the town's regulation "transformed" the plaintiffs' property from nonconforming to a permitted use, that regulation eliminated the plaintiffs' nonconforming use. Our statutes and case law preclude the town from doing this.

Because the use of the plaintiffs' property as a sand and gravel operation predated the institution of zoning ordinances in the town, the plaintiffs acquired, and continue to have, a valid, preexisting nonconforming use. The trial court improperly concluded that, when the town enacted the regulation allowing sand and gravel operations in the plaintiffs' zoning district subject to a special permit, it effectively destroyed the plaintiffs' nonconforming use and converted it into a permitted use, subject to a special permit.

## II

The plaintiffs next claim that the town's zoning regulations are unconstitutional because they deprive the plaintiffs of their vested right in the preexisting nonconforming use of their property.

This claim was not raised by the plaintiffs before the trial court, either in the original complaint or in any subsequent filings, including their motion to reargue the trial court's decision. Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial

or arose subsequent to the trial. . . ." Accordingly, "[w]e need not resolve . . . the plaintiff[s'] claim on the merits because the plaintiff[s] [have] not explained why this claim is appropriate for appellate review. [They do] not address the well established rule that, in the absence of exceptional circumstances, our appellate courts do not consider issues of law that were not presented first to the trial court." *Lundborg* v. *Lawler*, 63 Conn. App. 451, 459, 776 A.2d 519 (2001); see also *Lopiano* v. *Lopiano*, 247 Conn. 356, 372–73, 752 A.2d 1000 (1998); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48–49, 717 A.2d 77 (1998).

Accordingly, we decline to review this claim.

### III

The plaintiffs next claim that a town zoning enforcement officer cannot issue a cease and desist order against their use of their property merely because the plaintiffs did not obtain a special permit. We disagree.

The board asserts in its brief, and we agree, that the town has the right to regulate the plaintiffs' nonconforming use under its police powers. "It is unquestionably true that any regulation, under the police power, for the use of property must have a reasonable relation to the public health, safety and welfare and must operate in a manner which is not arbitrary, destructive or confiscatory." (Internal quotation marks omitted.) *Teuscher* v. *Zoning Board of Appeals*, 154 Conn. 650, 658, 228 A.2d 518 (1967). "The regulations come under the police power of the state which permits the regulation of any business or the use of any property in the interest of the public welfare or the public convenience, *provided it is done reasonably*. . . . To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public . . . require such interference; and second, that

the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 658–59.

"Regulation of a nonconforming use does not, in itself, abrogate the property owner's right to his nonconforming use. . . . A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 242, 662 A.2d 1179 (1995); see also *Ammirata* v. *Zoning Board of Appeals*, 65 Conn. App. 606, 613–14, 782 A.2d 1285 (2001).

Accordingly, while we disagree with the trial court's conclusion that the zoning regulation requiring a special permit that the town enacted extinguished the plaintiffs' preexisting nonconforming use, we affirm the judgment of the trial court on the alternate basis that the requirement that the plaintiff obtain a permit was a reasonable regulation of its nonconforming use under the town's police powers.

The judgment is affirmed.

In this opinion the other judges concurred.