[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
The plaintiffs, Robert G. Kovacs, Paul B. Kovacs, Roger P. Kovacs and Advance Stone, Inc., appeal from the decision of the defendant, the New Milford zoning commission (commission), denying their application for the renewal of a special permit to excavate on portions of a 347 acre property (property) located on Boardman Road in New Milford, Connecticut. The plaintiffs bring this appeal pursuant to General Statutes § 8-9.
 II BACKGROUND
This is one of five consolidated appeals arising out of the commission's denial of two applications to renew a permit to excavate portions of a 347 acre property on Boardman Road in New Milford. The Kovacses are the owners of the property and do business as a general partnership known as Quarry Stone Gravel. A portion of the property is leased to Advanced Stone, Inc., which operates a quarry on the property.
The record on appeal reveals the following facts. Between 1969 and 1971, the board of selectmen of the town regulated earth removal activities under a town ordinance. The property has always been in an industrial zone and parts of the property had been used for earth removal, quarrying and the processing of stone even before the town began regulating the activity in 1969. In December 1971, the town adopted zoning regulations pursuant to which the zoning commission assumed the function of reviewing and issuing excavation permits. The mining, quarrying and processing of gravel, sand, rock and other earth materials was a permitted use in the industrial zone until June 20, 1985, at which CT Page 16329 time the zoning regulations changed and the earth excavation operations on the property became an existing non-conforming use.
The Kovacses, who owned the property prior to 1969, took out permits to excavate 56 acres of the property in 14 permits of 4 acres each beginning in 1969. They have filed annual applications, first with the board of selectmen and then with the commission, renewing the 14 permits as either active or inactive permits every year since 1969. All of the annual permit renewal applications specifically recite that the area was covered by permit #15, "a portion of 347 acres to be excavated in the future."
On May 14, 2000, Robert Kovacs and Advanced Stone, Inc. applied for a renewal of permit #15 for 7 active permits and 7 inactive permits of 4 acres each for 56 acres of the subject property. Public hearings on the application were held on July 25, 2000 and September 12, 2000. The hearing was closed on September 26, 2000. On November 28, 2000, the commission denied the application. Notice of the denial was published on December 8, 2000, and this appeal was commenced on December 18, 2000.
As grounds for the appeal, the plaintiffs allege that the commission acted illegally, arbitrarily and in abuse of its discretion in the following ways: "(a) it disregarded evidence before it which showed that the use of the subject property complied with section 140-050 of the zoning regulations; (b) it improperly refused to renew a permit for a nonconforming use of the land, and made a decision which improperly restricts or prevents the right to continue a nonconforming use, and which ignores the natural expansion doctrine which applies to nonconforming mining or quarrying activities which began before the enactment of zoning regulations; (c) it applied the wrong test in denying the application; (d) it improperly commissioned, accepted and used a map of the subject property prepared for the purpose of stopping or restricting the use of the property and which was not disclosed to the applicant during the public hearing and then used it to deny the application, which amounted to illegal receipt of evidence . . . and a denial of the due process rights of the plaintiffs; (e) the decision is not supported by substantial evidence in the record; (f) the Commission improperly interpreted the zoning regulations; (g) the decision is based on the possibility of or anticipated future zoning violations, which is not a valid basis for denying a mining permit application; (h) it incorrectly found that the mined areas on the property exceeded the areas previously authorized for mining by the commission; (i) a majority of the Commission members prejudged and predetermined to deny the application; (j) denial of the application precludes any effective use of the subject property and takes away a continuing nonconforming use which amounts to a confiscation of it, in violation of the Fifth Amendment of the United CT Page 16330 States Constitution and Article I, section II of the Connecticut Constitution." (Appeal, ¶ 14.)
 III JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
 A AGGRIEVEMENT
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citations omitted; internal quotation marks omitted.) Harris v. ZoningCommission, 259 Conn. 402, 409, 788 A.2d 1239 (2002). "Aggrievement falls within two broad categories, classical and statutory." (Internal quotation marks omitted.) Cole v. Planning Zoning Commission,30 Conn. App. 511, 514, 620 A.2d 1324 (1993), aff'd on remand,40 Conn. App. 501, 671 A.2d 844 (1996). "`Aggrieved person' . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
The plaintiffs, Robert Kovacs, Paul Kovacs and Roger Kovacs and their partnership, Quarry Stone Gravel, are the owners of the property involved in this appeal. As such, they are statutorily aggrieved by the commission's decision. The plaintiff, Advanced Stone, Inc., operates the quarry on the property and leases part of the property for which the permit was requested. As a lessee of the property it is also aggrieved under § 8-8 (a)(1). R R Pool Home, Inc. v. Zoning Board ofAppeals, 43 Conn. App. 563, 568-70, 684 A.2d 1207 (1996).
 B Timeliness and Service of Process
CT Page 16331
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the commission's decision was published in the New Milford Times on December 8, 2000. (ROR, Item 52.) The present appeal was commenced on December 18, 2000, by service of process upon George Doring, chairman of the zoning commission of the town of New Milford and upon George Buckbee, town clerk of the town of New Milford. (Marshall's Return.) The court finds, accordingly, that the plaintiffs commenced this appeal in a timely fashion upon the proper parties.
 IV SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089
(1993), cert. denied, 114 S.Ct. 1190 (1993). "The burden of proof is on the plaintiff to demonstrate that the commission acted improperly." Sperov. Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." West Hartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 514, 636 A.2d 1342 (1994). "The reviewing court ought only . . . determine whether the assigned grounds are reasonably supported by the record and whether they are" Id., 514-15. Where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even one of the reasons given is sufficient to support it. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,576, 538 A.2d 1039 (1988).
 V DISCUSSION A
CT Page 16332 Whether the town's zoning regulations apply to the plaintiffs' commercial excavation operations
The commission stated several reasons for denying the plaintiffs' application, including the
plaintiffs' failure to comply with various permit application requirements. The plaintiffs argue, however, that they did not need an excavation permit because the zoning regulations that govern excavation activities do not apply to commercial excavation activities. The plaintiffs further assert that they filed permit applications in the past merely "in an attempt to work with the Town, but that they [were] not required to do so because they have a nonconforming use not expressly regulated under the regulations." (Plaintiffs' Brief, p. 15.)
The defendant counters that when the commercial excavation of earth products was made a nonconforming use in 1985, Plaintiffs held only one year permits. Once those permits expired, Section 140-060(7) expressly required, and continues to require, that Plaintiffs reapply for renewal. Moreover, the Zoning regulations continue to require that, as a condition of such renewal, Plaintiffs conduct their operations in accordance with the standards set forth in the Regulations. (Defendant's Brief, pp. 13-14.) The court agrees with the defendant.
The fact that the plaintiffs' right to excavate derives from General Statute § 8-2,[1] and not from local ordinance, does not preclude the town from regulating the activity. "Regulation of a nonconforming use does not, in itself, abrogate the property owner's right to his nonconforming use. . . . A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid." (Internal quotation marks omitted.) Bauer v. Waste Management of Connecticut,Inc., 234 Conn. 221, 242, 662 A.2d 1179 (1995); see also Taylor v. ZoningBoard of Appeals, 65 Conn. App. 687, 698, 783 A.2d 526 (2001) ("The board asserts in its brief, and we agree, that the town has the right to regulate the plaintiffs' nonconforming use under its police powers.")
The plaintiffs do not contend that the earth excavation regulations in the present action are unreasonable or unrelated to the public interest. The plaintiffs argue, instead, that the regulations simply do not apply to their commercial excavation operations "[because] commercial CT Page 16333 excavation is not allowed in any zone [and] common sense indicates that the regulations are not designed to regulate uses which are not permitted in any zone." (Plaintiffs' Brief, pp. 14-15.)
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission, 55 Conn. App. 533,538, 738 A.2d 1157 (1999). "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [However], when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) Taylor v. Zoning Board of Appeals, supra,65 Conn. App. 692-93.
Chapter 140 of the New Milford zoning regulations is entitled "Excavation of Earth Products." Section 140-010 of Chapter 140 states: "The purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth, sand, stone, gravel, soil, minerals, loam, clay, peat moss and any other earth products. This section further is intended to conserve and preserve water storage areas, assure that erosion and sedimentation is minimized, that water pollution is prevented, that hazards inherent to open pits and steep slopes of loose earth are prevented, that nuisances . . . are minimized, that visual blight is controlled, and that the productive usage of land is maintained. . . ." Section 140-040, entitled "Excavation Permit Application Requirements," provides that "[a]n application for a permit to excavate and remove any of said products shall be made to the Commission by the property owner . . ." Section 140-050(1) provides that "[i]n considering any such application, the Commission shall consider the effect upon the premises and adjacent property, upon property values, health, safety, public welfare and any effect upon the future of the premises involved. (2) The Commission may approve the plan only when it is satisfied that the following conditions will be complied with in the undertaking of such excavation." Section 140-050(2)(A) through (O) then lists the health, safety and public welfare requirements referred to in § 140-050(2).
As previously noted, the plaintiffs assert that they are exempt from CT Page 16334 the town's excavation permit requirements because of § 140-030(1),[2]
which prohibits the commercial excavation of land in every zone. The plaintiffs argue, essentially, that the court should interpret the town's prohibition against commercial excavation as evidence of the town's intent not to regulate the activity at all. The plaintiffs' argument, however, ignores the unqualified and unambiguous language of § 140-010, which states that "[t]he purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth, sand, stone, gravel, soil, minerals, loam, clay, peat moss and any other earth products." It is well established that "[w]hen interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.)Hyllen-Davey v. Plan Zoning Commission, 57 Conn. App. 589, 595,749 A.2d 682 cert. denied, 253 Conn. 926, 754 A.2d 796 (2000). Moreover, "[w]e do not read statutory provisions to further bizarre or absurd results." Harris v. Zoning Commission, 259 Conn. 402, 436, 788 A.2d 1239
(2002). Statutes must be construed using common sense and assuming a reasonable and rational result was intended. Modern Cigarette, Inc. v.Orange, 256 Conn. 105, 120-21, 774 A.2d 969 (2001). In the court's view, to hold that the health and safety regulations at issue in the present action apply only to the small-scale excavation activities permitted under the regulations, but not to preexisting nonconforming commercial-scale excavation, would produce unreasonable and unintended results. Accordingly, the court finds that the New Milford zoning regulations apply to the plaintiffs' commercial excavation operations on the property.
 B Whether There is Substantial Evidence in the Record to Support the Commission's Finding That the Application Failed to Comply with Conditions Set Forth in the Regulations
The commission stated the following reasons for denying the plaintiffs' application: "(1) The current mining activities conducted by the applicant are not in compliance with subsection 2C of Section 140-050 of the zoning regulations; (2) The current mining activities conducted by the applicant are not in compliance with subsection 2D of Section 140-050 of the zoning regulations in that where the dept of excavation exceeds 20 feet, the distance from the property line has not been increased 1' for each additional vertical foot of excavation; and (3) The current mining activities conducted by the applicant are not in compliance with subsection 2D of Section 140-050 of the zoning regulations in that the CT Page 16335 maximum depth of the cut is greater than the vertical depth of 30'. Nor has a second cut been made no closer than 30' from where the first cut ends.; (4) The applicant has over-mined the permit area in that he exceeded the limits of the area authorized by the commission to be mined; (5) The applicant has not demonstrated that there is enough material (earth, sand, stone, gravel, or other earth products) remaining on site to effect restoration pursuant to the provisions of subsection 2F of section 140-050 of the zoning regulations; and (6) The applicant has failed to comply with the provisions of subsection 2J of section 140-050 of the zoning regulations." (ROR, Item 48, p. 1.)
Section 140-050(2)(C) of the New Milford zoning regulations provides: "No excavation shall take place within (50) feet of any property or highway line regardless of elevation, and no shrubbery, grass or trees shall be removed from the fifty foot strip until restoration begins." The commission found that the plaintiffs' application proposed excavation within fifty feet of property owned by Fairway Asset Management. The commission's finding was supported by substantial evidence in the record. (See ROR, Items 9, 15, 24 25.)
The plaintiffs argue, however, that the commission ignored evidence at the hearing that the mortgage foreclosure that resulted in Fairway Asset Management's ownership of 223 acres of the subject property was in the process of being undone, which would have eliminated the property line issue. The plaintiffs' further argue that "[a]fter the Commission's decision the foreclosure was vacated nunc pro tunc with the consent of all parties." (Plaintiffs' Reply Brief, p. 9.) It is undisputed, however, that at the time of the decision, the commission had before it a certificate of foreclosure which evidenced that title to the foreclosed property had become absolute in Fairway Asset Management, Inc. on December 15, 1999. (ROR, Item 9.) The court finds, accordingly, that there is substantial evidence in the record to support the commission's finding that the plaintiffs' application proposed excavation within fifty feet of a property line and thus violated § 140-050(2)(C) of the New Milford zoning regulations.
The commission also found that the plaintiffs' application violated § 140-050(2)(D) of the regulations, which provides: "When the depth of the excavation exceeds twenty (20) feet, the distance from the property line or highway line shall be increased not less than one (1) foot for each additional vertical foot of excavation. The maximum depth of the cut shall not be greater than a vertical distance of thirty (30) feet. Should excavation exceeding a vertical distance of thirty (30) feet be desired, a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends. These distances shall apply to CT Page 16336 all succeeding cuts."
The evidence in the record supports the commission's finding that the plaintiffs' excavation operations violated § 140-050(2)(D). First, there was undisputed evidence that the plaintiffs had failed to increase the distance from the Fairway Asset Management property line one foot for each additional vertical foot of excavation. At the September 26, 2000 hearing on the plaintiffs' application, David Marsh, the commission's engineering consultant, estimated the depth of cut in the vicinity of the Fairway Asset Management property line to be between eighty and one hundred feet. (ROR, Item 44, p. 16.) Based on his calculation of the depth of cut and its proximity to the property line, Marsh testified that a one hundred and eighteen foot set back was required under the regulations. (ROR, Item 19; Item 47, p. 2.)
Finally, the evidence in the record supported the commission's finding that the plaintiffs had not complied with § 140-050(2)(D)'s requirement that where excavation exceeding a vertical distance of thirty feet be desired, "a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends." Marsh reported to the commission at the November 14, 2000 closed meeting on the plaintiffs' application: "There's suppose to be a 20' bench I believe after anything exceeding 30' . . . which they haven't done. . . . Kathy and I were both there and we don't see any attempt to bench it at all." (ROR, Item 47, p. 3.)
The plaintiffs argue that while "the statements in the Marsh letter on inadequate benching may be factually correct . . . they overlook the fundamental fact that these requirements only apply to excavations close to a property line or highway line. . . . [T]he elimination of the foreclosure eliminates the benching and setback distances from property lines. . . ." (Plaintiffs' Brief, pp. 18-19.) The commission counters that the thirty foot limitation on depth of cut and twenty foot benching requirement pertains to all excavations, regardless of their proximity to property or highway lines. (Defendant's Brief, pp. 19-20.) The court agrees with the commission.
"It is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission, supra, 55 Conn. App. 538. CT Page 16337
Section 140-050(2)(D) provides: "When the depth of the excavation exceeds twenty (20) feet, the distance from the property line or highway line shall be increased not less than one (1) foot for each additional vertical foot of excavation. The maximum depth of the cut shall not be greater than a vertical distance of thirty (30) feet. Should excavation exceeding a vertical distance of thirty (30) feet be desired, a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends. These distances shall apply to all succeeding cuts."
The court agrees with the commission's interpretation of § 140-050(2)(D) that the thirty foot depth limitation and twenty foot benching requirement applies to any excavation. Indeed, in the court's view, the language is plain and unambiguous. Section 140-050(2)(D) is part of § 140-050, entitled "Regulations Concerning Conduct of Operations." Section 140-050(2) states that "[t]he Commission may approve the plan only when it is satisfied that the following conditions will be complied with in the undertaking of such excavation." Subsection (2)(D) is one of the conditions referred to in subsection (2). Read together with subsection (2), as it must be, subsection (2)(D) sets forth the requirements pertaining to the depth of excavations. First, it provides that "[w]hen the depth of the excavation exceeds twenty (20) feet, the distance from the property line or highway line shall be increased not less than one (1) foot for each additional vertical foot of excavation." It then provides, however, that "[t]he maximum depth of the cut shall not be greater than a vertical distance of thirty (30) feet. Should excavation exceeding a vertical distance of thirty (30) feet be desired, a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends." Subsection (2)(D) concludes by stating that the depth and bench distances specified in this subsection "apply to all succeeding cuts," that is, excavations anywhere on the property.
Assuming, arguendo, that 140-050(2)(D) was susceptible to more than one interpretation, the rules of statutory construction require the court to look to the purpose the regulation serves in order to discern the drafters' intent. "A statute should not be interpreted in any way to thwart its purpose . . . and . . . [i]n construing a statute, common sense must be used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result. . . ." (Citations omitted; internal quotation marks omitted.) Caltabiano v. Planning Zoning Commission, supra, 211 Conn. 666-67.
Section 140-010 of the New Milford zoning regulations provides in part that "[t]he purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth CT Page 16338 [products.] This section further is intended to . . . assure . . . that erosion and sedimentation is minimized . . . [and] that hazards inherent to open pits and steep slopes of loose earth are prevented. . . ." In the court's view, to hold that the depth of cut limitations and benching requirement do not apply to interior excavations would not only result in, but would implicitly permit, the very dangerous conditions that the regulations expressly seek to prevent. Accordingly, the court finds that § 140-050(2)(D) applies to the plaintiff's excavation operations.
The commission also denied the plaintiff's application because "the applicant has not demonstrated that there is enough material (earth, sand, stone, gravel, or other earth products) remaining on site to effect restoration pursuant to the provisions of subsection 2F of section 140-050 of the zoning regulations." (ROR, Item 48, p. 2.) Section 140-050(2)(F) provides in relevant part: "When excavation and removal operations, or either of them, are completed, or if a permit has expired and/or has not been renewed, the excavated area shall be graded to within twenty-five (25) feet of the permit line, adjacent property line and/or highway lines, so that the slopes and disturbed areas shall be no steeper than one to three (1:3) (vertical to horizontal). A layer of topsoil shall be spread over the excavated areas, except exposed rock surfaces, to a minimum depth of three (3) inches. . . . This regulations shall take place within one (1) calendar year following the completion of work or the expiration or non-renewal of a permit. . . ."
The plaintiffs argue that the commission's decision to deny their application partly on the basis of § 140-050(2)(F) was incorrect because the section only applies where excavation is completed and does not require that the property be restored with on-site materials. (Plaintiffs' Brief, pp. 19-20.) The commission argues that it "was required by Section 140-050(2) to find that the site would be restored in the manner required by Section 140-050(2)(F). Plaintiffs' purported "intention' to restore the site with trucked in materials was never articulated to the Commission at the public hearing. Nor did Plaintiffs ever present any plan to demonstrate that the site would be restored to the slope required by the Regulations." (Defendant's Brief, p. 24.) The commission further argues that "[s]ince the record amply supports the negative conclusion reached by the Commission on the issue of the site restoration, the decision denying renewal of the excavation permit must be sustained." (Id., p. 25.) The court agrees with the commission.
Section 140-050(2) of the regulations provides that "[t]he Commission may approve the plan only when it is satisfied that the following conditions will be complied with in the undertaking of such excavation . . . (F) When excavation and removal operations . . . are completed . . . CT Page 16339 the excavated area shall be graded to within twenty-five (25) feet of the permit line . . . so that the slopes and disturbed areas shall be no steeper than one to three (1:3) (vertical to horizontal)." (Emphasis added.)
The evidence in the record was sufficient to support the commission's concern that the plaintiffs would not comply with the restoration requirements of § 140-050(2)(F). Such evidence included evidence that a substantial portion of the already excavated site would have to the filled in order to achieve the required one to three slope as well as evidence that a substantial amount of fill would have to be brought to the site, at considerable cost, in order to achieve the required slope. (ROR, Items 16; 25; 34, pp. 2-3; 43, pp. 5-8; 15; 35, pp. 3-5; 44, pp. 4-5, 9, 16-17 and 19.)
The commission also denied the plaintiffs' application, in part, because it violated § 140-050(2)(J). Section 140-050(2)(J) provides: "At no time shall overhang be permitted on any face, and at no time shall slopes in excess of one to three (1:3) (vertical to horizontal) be present on any face, except the face where active excavation is being carried on. The plaintiffs do not deny that slopes in excess of one to three exist throughout the excavation site. The plaintiffs argue, however, that the entire face of their excavation is an area of active excavation and therefore not subject to the slope requirements of subsection (2)(J). (Plaintiffs' Brief, p. 20.) The issue of whether the entire excavation site was "active" for the purposes of subsection (2)(J) was never addressed in the record. Thus, while the plaintiffs' operations are subject to the provisions of subsection (2)(J), there was not substantial evidence in the record to support the commission's finding that the plaintiffs had violated those provisions.
 C Whether the Commission Improperly Received Evidence After the Close of the Public Hearing
The plaintiffs also allege that the commission improperly received evidence from its professional staff after the close of the public hearing. Specifically, the plaintiffs allege that the commission received photographs of the excavation site taken by Castagnetta, the zoning enforcement officer, as well as two maps of the subject property and a report from Donald Marsh, the commission's engineering consultant. (Plaintiffs' Brief, p. 22.) The plaintiffs concede, however, that one of the maps, Exhibit 25, was marked as received from Marsh at the September 26, 2000 public hearing. (Plaintiffs' Reply Brief, p. 4.) The other map, CT Page 16340 Exhibit 28A, is marked as received from Donald Marsh on November 14, 2000. It should be noted, however, that Exhibit 25 and Exhibit 28A are identical maps. They were both prepared by CCA, LLC, are drawn to the same scale, are dated September 8, 2000 and are designated "Map No. 673." (ROR, Items 25, 27.)
"The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Norooz v.Inland Wetlands Agency, supra, 26 Conn. App. 573-74. Moreover, the plaintiffs must show that the information received by the agency was prejudicial. McCrann v. Town Plan Zoning Commission, 161 Conn. 65,78, 282 A.2d 900 (1971).
The plaintiffs argue that the two maps were prejudicial because they showed the active excavation areas within fifty feet of the property line established by the foreclosure. (Plaintiffs' Reply Brief, p. 5.) The plaintiffs further argue that Exhibit 24, the map prepared by David Ryan, the plaintiffs' surveyor, showed the excavation areas at least one hundred feet from the foreclosure line. (Id.)
The commission argues that Exhibit 25 was submitted and discussed at the September 26, 2000 hearing and that Exhibit 27, which accompanied Marsh's October 16, 2000 report on the plaintiffs' application, was simply a "clean copy" of Exhibit 25 used by Marsh to graphically demonstrate to the commission where the plaintiffs appeared to be in violation of §§ 140-050(2)(C) and (D) of the regulations. (Defendant's Brief, p. 30.)
As previously noted, Exhibit 25 is marked as having been received on September 26, 2000. An examination of the September 26, 2000 hearing transcript indicates that Exhibit 25 was examined and discussed fully at that hearing. (See e.g., ROR, Item 44, pp. 4-5, 9, 14.) Indeed, Exhibit 25 is the only map in the record containing red, blue and green lines. All three of these lines were referred to at various times and by various witnesses at that hearing. The court finds, accordingly, that Exhibit 25, and its duplicate, Exhibit 27, do not constitute evidence of any fact that was not introduced at the public hearing on the plaintiffs' application.
Additionally, the court notes that even if Exhibit 25 and Exhibit 27 were based on some fact or evidence not presented at the public hearing, the plaintiffs cannot demonstrate prejudice. The proximity of the CT Page 16341 plaintiffs' excavation activities to the foreclosure line was simply one of several reasons why the commission denied the plaintiffs' application. The commission also denied the application because of the plaintiffs' failure to comply with the depth of cut and benching requirements, and for their failure to satisfy the commission that the land restoration requirements would be met, requirements which apply regardless of the excavation's proximity to adjacent property lines.
The court also disagrees with the plaintiffs' argument that Exhibit 10, the zoning enforcement officer's photographs of the subject excavations, constitutes prejudicial evidence of some fact not previously presented at the public hearings. Indeed, the excavations depicted in the photographs were, for the most part, the sole subject matter of said hearings and therefore are not evidence of a fact not contained in the record. (See ROR, Items 33, 34, 44.)
Finally, the court disagrees with the plaintiffs' argument that Marsh's October 16, 2000 report to the commission was based on any fact not discussed at the public hearing. The single page report states the following: "On October 10, 2000 the Zoning Enforcement Officer, myself and Mr. Robert Kovacs visited the ASI mine. It was obvious that there has been some excavation activities beyond the limit of the zoning regulations. A review of the 2000 survey verifies this fact. The excavation of certain points, as outlined in yellow on the 2000 map, have exceeded the regulations C D, Sections 140-50, as follows: (1) The excavation varies from elevation 280+ to 368+ — or 88' depth. (2) section D would require that the excavation be no closer than 50' + 68' or 118'. (3) There are no benches at 20' depth, as required in section D of the regulations (there should be 3.) (ROR, Item 19.)
As previously noted, "[a zoning] board, composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise. . . . This entitlement is necessarily implied in the legislation creating the board and setting forth its duties. Spero v.Zoning Board of Appeals, 217 Conn. 435, 444, 586 A.2d 590 (1991). "Competent subordinates may sift and analyze evidence, recommend findings of fact and conclusions of law, and draft orders for an administrative agency as an integral part of the process." Connecticut Natural GasCorporation v. Puca, 183 Conn. 128, 138, 439 A.2d 282 (1981).
An examination of the transcripts from the public hearings reveals that all three of the issues addressed in Marsh's report were discussed at the hearings. (See, e.g., ROR, Item 44, p. 16.) Moreover, as previously noted, Exhibit 25, the 2000 survey map utilized by Marsh in calculating distances and elevations in his report, was also examined and discussed CT Page 16342 at the September 26, 2000 public hearing. The court finds, accordingly, that Exhibit 19 was based on facts and evidence contained in the record.
 VI CONCLUSION
For the foregoing reasons, the plaintiffs' appeal is dismissed.
CREMINS, J.