Deborah KATZ and Anita
Katz, Plaintiffs,

v.

STANNARD BEACH ASSOCIATION,
et al.

No. 3:98cv851 (JBA).

United States District Court,
D. Connecticut.

March 10, 2000.

Eliot B. Gersten, Christopher M. Harrington, Gersten & Clifford, Hartford, CT, for Deborah Katz and Anita Katz, plaintiffs.

Jeremiah F. Donovan, Old Saybrook, CT, for Stannard Beach Assn Inc., Myrtle E. Schwartz, Anna Gabriel, Rose Madnick, Rhoda Burwick, Sydelle Baskind, Carol Robbin, Patricia Breen, Anna D. Bonadies and Mackey Barron, defendants.

## RULING ON DEFENDANTS'
## MOTION TO DISMISS

### [Doc. # 39]

ARTERTON, District Judge.

In this action, Plaintiffs, both residents of Stannard Beach, a political subdivision created under state law, allege that the Stannard Beach Association ("SBA") and nine individual homeowners, who are voting members of SBA, solicited, initiated and have maintained state court litigation against Deborah Katz claiming an easement on her property, all in violation of the equal protection clause, due process and takings clause of the Fifth and Fourteenth Amendments of the United States Constitution as well as the analogous provisions of the Connecticut Constitutions. In addition, Plaintiffs allege that the nine individual defendants violated the terms of an agreement settling the pending state litigation.

For the foregoing reasons, Defendants' Motion to Dismiss for failure to state a Section 1983 claim in Counts One, Two and Three pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. # 39] is GRANTED. Inasmuch as the Court has dismissed all the federal claims, it declines to retain supplemental jurisdiction over the remaining state law claims and dismisses Plaintiffs' claims under the Connecticut Constitution and common law pursuant to 28 U.S.C. § 1367(c)(3).

### Factual Background

Taking as true all well-pled facts alleged in the Complaint and drawing all inferences in favor of the Plaintiffs, the following can be derived from the Amended Complaint. On June 2, 1994, Plaintiff Deborah Katz purchased a home at 101 Second Avenue located in Stannard Beach in the Town of Westbrook, Connecticut. Anita Katz owns property at 38 Stannard Drive, also within Stannard Beach.

Stannard Beach is a locality created by special state legislation as a residential resort for the health, comfort, safety, protection and convenience of its inhabitants. See Conn.Spec.Acts No. 526 (1947). See Am.Compl.Ex. A. As mandated by the authorizing legislation, Stannard Beach is governed by the Stannard Beach Association, which consists of record owners of property located within the locality. The Stannard Beach Association is empowered to enact by-laws, create a Board of Directors for governance, levy taxes, and create regulations.

Upon purchasing 101 Second Avenue, Deborah Katz immediately undertook a series of improvements including replacement of the cement walkway and placement of bushes along the boundary of her property leading to the beach. Shortly thereafter in June or July 1994, the SBA held a meeting to discuss these improvements. Defendants discussed how these improvements encroached on a walkway located on and traversing Plaintiff's property that members of the Stannard Beach had previously used to access the ocean. At this SBA meeting, a vote authorizing the SBA to initiate litigation against Deborah Katz seeking declaration of an easement or right to cross over a portion of Deborah Katz's property as they done previously to access the beach. The vote included non-voting members in contravention of the SBA by-laws. See Constitution and By-Laws, Am.Compl.Ex. B. In November 1995, the SBA solicited individual members to join SBA's suit as party plaintiffs for the state court action against Deborah Katz in order to obtain standing. As part of this solicitation, SBA represented it would cover legal fees out of the taxes it collected from all members including Anita and Deborah Katz. After lining up eleven individual homeowners (nine of whom are named defendants in this action), SBA filed suit against Deborah Katz in Connecticut Superior Court on March 24, 1995. In the complaint filed in the first state court action, SBA and the 11 individual defendants sought to establish that they had easement rights over a portion of Deborah Katz's property for access to the

beach and sought money damages. The SBA was subsequently dismissed from the first state action since its complaint sought money damages. *See Stannard Beach Assoc. v. Katz*, Civ. No. 075022, 1996 WL 24557 (Conn.Super. Jan.5, 1996).

After the SBA was dismissed from the first state court action, SBA hired a new attorney to file a second state court action deleting its earlier claim for money damages, without ever obtaining approval from the SBA board of directors or its members. (*Stannard Beach v. Deborah Katz*, Civ. No. 98–0500381). This second court action brought by the SBA is still pending although Deborah Katz has filed a motion to dismiss. In total, the SBA has authorized the expenditure of at least $21,000 for the legal fees associated with maintaining and prosecuting the two state action actions.

On August 2, 1999, Plaintiffs amended their complaint in this action pursuant to the Court's concern that subject matter jurisdiction was doubtful under the complaint's articulation of the Section 1983 claim.[1] As now pled in their Amended Complaint, Plaintiffs make four claims. In Count One, Plaintiffs allege that defendants violated their equal protection rights under both the federal and state constitutions by soliciting litigants, initiating and maintaining the state court action against Deborah Katz for the private benefit of the other homeowners. In Count Two, Plaintiffs allege Defendants' conduct in voting to initiate and support the state court action against Deborah Katz deprived them of their interest in their good names and reputation, their interest in private property and beach access and their right to not have their municipal taxes used for private benefit in violation of their substantive and procedural due process rights under both the federal and state constitutions. In Count Three, Plaintiffs allege that defendants "attempted to take or otherwise seize, appropriate, or encumber property of Deborah Katz without compensating" in violation of both the United States and Connecticut Constitutions. In Count Five,[2] Plaintiffs allege that the nine individual defendants have violated the terms of the settlement agreement entered into in the state court action.

### Motion to Dismiss [Doc. # 39]

The Defendants move to dismiss this action on several grounds. First, all Defendants contend that this Court should abstain based on *Pullman* grounds in light of the concurrent pending state court action. Second, the nine individual defendants move to dismiss Counts One, Two and Three arguing plaintiff has failed to allege these defendants were state actors or acted in concert with state actors.[3] Third, the nine individually named defendants move to dismiss Count Five, the state law claim alleging that the individual defendants violated the terms of a settlement agreement, on the grounds that this Court should decline to exercise its supplemental jurisdiction over the contract claim pursuant to 28 U.S.C. § 1367 as this claim is already a counterclaim in the state court proceeding. Finally, SBA moves to dismiss Counts One, Two and Three for failure to state a claim.

### Discussion

#### 1. Abstention

■ The Supreme Court has cautioned that "abstention from the exercise of fed-

---

1. *See* Tr. of the Call of the Calendar (Jul. 12, 1999) (Doc. # 37) at 23–24. (After extensive colloquy with counsel regarding the problems in Plaintiff's original complaint, the Court permitted Plaintiffs the opportunity to amend their complaint and inquired "when will you be able to have your amended complaint that will separate out a Count Three and a Count Four, Fifth Amendment and Fourteenth Amendment count and articulating them with the kind of particularity [so] that we will be able to see whether or not if you prove those facts you would have a 1983 claim?").

2. There is no Count Four in the Amended Complaint.

3. In light of the dismissal on other grounds, this contention is not addressed.

eral jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Indeed, federal courts have a "virtually unflagging obligation" to exercise jurisdiction over all cases properly before them. *Id.* at 817, 96 S.Ct. 1236. Accordingly, "district courts should abstain from hearing cases only under very unusual or exceptional circumstances." *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir.1995).

■ In *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. "However, federal courts need not abstain on *Pullman* grounds when a state statute is not fairly subject to an interpretation which will render unnecessary" adjudication of the federal constitutional question. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

> "In the abstract of course, such possibilities always exist. But the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary. Rather, '[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'"

*Id.* at 237, 104 S.Ct. 2321.

■ As Plaintiffs clarified, their claims do not depend on the outcome of the state court litigation as they are based on Defendants' pre- and peri-litigation conduct. Since the defendants point to no difficult or unsettled questions of state law which if resolved would affect the federal constitutional rights claimed by Plaintiffs, the Court finds no reason to abstain from exercising its jurisdiction over this case.

### Fed.R.Civ.P. 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the sufficiency of the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Koppel v. 4987 Corp.*, 167 F.3d 125, 130 (2d Cir.1999); *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In making this determination, the court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995). *See also Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683. The court may not grant the motion merely because recovery seems remote or unlikely. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). Nonetheless, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

### 2. Counts 1, 2, and 3

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must first set forth factual allegations which if proved would establish that "the defendant has deprived him of a right secured by the Constitution and laws of the United States." Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Therefore, the Court first considers whether Plaintiffs' complaint alleges a recognized constitutional right allegedly infringed. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

### a. Count 1—Equal Protection

The constitutional right to equal protection of the law is "essentially a direction

that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As the Supreme Court recently observed:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

*Village of Willowbrook v. Olech,* —— U.S. ——, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (Feb. 2000) (affirming Seventh Circuit's reinstatement of a Equal Protection claim alleging village arbitrarily demanded larger easement from plaintiff than other similarly situated residents in return for hooking up plaintiff to municipal water supply, based on ill will generated from plaintiff's prior successful litigation against the village).

■ Therefore, to state a cause of action under Section 1983 based on the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively treated; and (2) such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996).

Plaintiffs' Amended Complaint claims that the SBA and defendants "discriminate[d] against plaintiffs and in favor of private interests of the individual defendants by (a) bringing and financing action in its name and in the name of the individual defendants to create a right of way in the individual defendants over Deborah Katz's property; and (b) bringing and financing action in the name of the individual defendants to obtain money damages as against Deborah Katz in favor of the individual defendants." *See* Am.Compl. at 32.

■ Plaintiff's equal protection claim fails for two reasons. First, as Plaintiff's counsel conceded at oral argument, plaintiffs fail to allege that they were treated differently than others. *See Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 61 (2d Cir.1985) (allegation that others were treated differently is "essential" to an equal protection claim). Moreover, the Amended Complaint does not allege selective treatment based upon their race, religion, or any intentional effort by defendants to punish them for exercising their constitutional rights or that Defendants' conduct was motivated by bad faith, "illegitimate animus," "ill will," or malice to injure them. *See Crowley v. Courville,* 76 F.3d at 53 (plaintiff "must demonstrate that defendants maliciously singled out his application for relief from the parking ordinance with the intent to injure him."); *Village of Willowbrook v. Olech,* —— U.S. ——, 120 S.Ct. 1073, 1075, 145 L.Ed.2d 1060 (Feb. 2000) (per curiam) (Breyer, J., concurring) (observing such claims must include an added factor approaching 'vindictive action,' 'illegitimate animus' or 'ill will' to "minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right").

Absent either of these essential elements, even when considered in the light most favorable to the Plaintiffs, these facts fail to state an equal protection claim.

### b. Count 2—Due Process

In their Second Count, Plaintiffs allege that Defendants violated their due process rights under the Fourteenth Amendment. Although the Amended Complaint does not specify whether Plaintiffs claim substantive or procedural due process violations, at oral argument, Plaintiff's counsel clarified they intended claims under both theories.

■ The threshold inquiry for either a substantive or procedural due process claim is whether the interest claimed rises to the level of one protected by the Due Process Clause. U.S. Const. amend. IV,

§ 1. In their Amended Complaint, their opposition papers, and during oral argument, Plaintiffs articulate the following three interests as bases of their due process claim; 1) their interest in their good names, reputations, and standing in the community; 2) their interest in their private property and beach access, and 3) their interest in the expenditure of tax dollars. The Court will analyze Plaintiffs' claim of constitutional protection for each of these property or liberty interests.

### 1. Interest in Good Name and Reputation

■ In claiming a liberty interest in their good names, reputations, standing in the community, and standing as members in the SBA, Plaintiffs rely on *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) in which the Supreme Court invalidated a state statute permitting the posting of names of persons who became violent after consuming alcohol thereby precluding their right to purchase alcohol for one year without notice or any hearing. However, as the Second Circuit has clarified, mere damage to reputation alone does not give rise to a liberty interest claim; rather, to invoke the protections of due process under the Fourteenth Amendment, the governmental action must also deprive, extinguish, or significantly alter a right or status previously recognized and protected by law. "This test for liberty interest claims stemming from alleged government defamation is commonly referred to as the "stigma plus" test." *Greenwood v. New York*, 163 F.3d 119 (2d Cir.1998) (finding that defamation combined with deprivation of a property interest in state doctor's clinical staff privileges gave rise to a due process liberty interest); *Easton v. Sundram*, 947 F.2d 1011, 1016 (2d Cir.1991) (defamation plus the "termination of some other legal right o[r] status will suffice to constitute a deprivation of a liberty interest"). While injury to Plaintiffs' good names may be cognizable as a violation of state common law of defamation, public opprobrium can-

not constitute a due process violation. Since Plaintiffs do not allege in their complaint or otherwise identify any additional right or status recognized under Connecticut law or any right that has been deprived, extinguished or significantly altered by Defendants' conduct in initiation or maintenance of the state court litigation, Plaintiffs have failed to allege any facts which if proved would show a cognizable due process liberty interest.

### 2. Interest in private property and beach access

■ Plaintiffs claim a constitutionally protectable property interest in "their private property and private beach access ways." Am.Compl. at ¶ 37b. Constitutionally protected property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999). However, Plaintiffs fail to set forth a factual scenario showing any deprivation to any property ownership interest as a result of the Defendants' decision to solicit parties and initiate the state court actions. A federally protectable property interest has been recognized where the right to use one's land in a certain way, as for instance, by a building permit or a zoning ordinance, has been infringed. *See RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 915 (2d Cir.1989) (analyzing whether applicant possessed property interest in building permit); *Sullivan v. Town of Salem*, 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard). However, a party must "have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of it. [Sh]e must, instead, have a legitimate claim of entitle-

ment to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs have clarified that their Section 1983 claim does not extend to the Defendants' property title litigation itself, only Defendants' misconduct surrounding the suit's initiation and maintenance, which is not alleged to have directly impacted Plaintiffs' property so far. Thus, Plaintiffs' allegations fail to articulate any way in which the Defendants' conduct has prevented or interfered with any entitled use of their private property. At oral argument, Plaintiffs' counsel argued that Deborah Katz would not stay alone in her home and desired to be free from both the hassle and uncertainty of the state court litigation and the unresolved claims over a portion of her property. But Plaintiffs' subjective desires do not establish the requisite basis for entitlement to enjoy protection under the due process clause. Accordingly, the Court discerns no deprivation of any constitutionally protected right related to her private property or beach access to be stated by these allegations.

### 3. Interest in the Expenditure of tax dollars

■ Finally, Plaintiffs claim they each have a protected property interest in having their municipal tax dollars spent according to the voting procedures outlined in the state legislation and by-laws governing the SBA. Plaintiffs allege that SBA's vote to commence the state court action as well as subsequent decision to retain new counsel after it had been dismissed from the state court action violated the SBA's procedures.

Plaintiffs posit that such a right to have tax money expended according to state law was recognized in *United States v. City of New York,* 972 F.2d 464, 470–71 (2d Cir. 1992). However, in *City of New York,* the Second Circuit only found that a municipal taxpayer had standing under the Constitution's "case or controversy" requirement to challenge New York City's action in enter-

ing into certain contracts in alleged violation of state law. *Id.* In *City of New York,* Councilwoman Maloney originally brought a state law claim under Article 78, challenging the way certain contracts were let. The case was removed to federal court pursuant to the All Writs Act, 28 U.S.C. § 1651, since the state action threatened the integrity of a consent decree previously issued by the federal court. *Id.* at 469. Subject-matter jurisdiction in *City of New York* was thus not premised on Section 1983 and its holding does not establish that a municipal taxpayer has a property interest in municipal tax expenditures enforceable under Section 1983. While a suit based on deviations in SBA's voting procedures might be actionable under state law in a declaratory judgment action or other statutory proceeding analogous to New York's Article 78 proceeding, Plaintiffs' interest as a municipal taxpayer in having their moneys expended according the procedure provided for under state law simply does not rise to the level of a constitutionally protectable property right and thus Count Two fails to state a claim under § 1983 as a matter of law.

### c. Count 3—Taking

■ The Takings Clause of the Fifth Amendment provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The purpose of the Takings Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

■ Defendants contend that Plaintiffs' takings claim is not ripe for review. The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 58, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). In *Williamson County Regional Planning*

*Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set forth a two-pronged test for assessing the ripeness of takings-type claims. The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a "final decision." *Williamson,* at 185–186, 105 S.Ct. 3108. The second prong requires the plaintiff to have sought compensation if the state provides a "reasonable, certain and adequate provision for obtaining compensation." *Id.* at 194, 195, 105 S.Ct. 3108.

■ As pled in the complaint, Plaintiffs' takings claim is premised on the consequence of SBA's filing of the state court action against Deborah Katz. It is undisputed that there has been no final resolution of the Defendants' claim of interest in Deborah Katz's property. The Defendants have not filed a *lis pendens* or otherwise filed any notice on either Plaintiffs' land title. As reflected in the language of the complaint, Plaintiffs' claim is based on the potential that at some point in the future the state court action may be resolved in a manner unfavorable to their claim of exclusive property ownership.

In opposition to Defendants' claim of unripeness, Plaintiffs rely on a single case, *McKenzie v. City of White Hall,* 112 F.3d 313, 316 (8th Cir.1997). This reliance is misplaced. Unlike the facts of this case, in *McKenzie,* the City had already obtained a right in plaintiff's property, as evidenced by its already secured conditional easement, which the City could invoke at some point in the future based on the occurrence of certain conditions subsequent. In this case, SBA has not yet secured or established any interest in Plaintiffs' properties.

Alternatively, Plaintiffs' takings claim fails under the second prong of *Williamson* as the Amended Complaint does not allege that Plaintiffs have already availed themselves of the "legally sufficient [inverse condemnation] procedure, under article first, § 11, of the constitution of Connecticut, to obtain just compensation for the alleged taking of their property." *Melillo v. City of New Haven,* 249 Conn. 138, 154 n. 28, 732 A.2d 133 (Conn.1999) (affirming trial court's rejection of plaintiff's takings claim under the Fifth Amendment given Plaintiff's failure to pursue available state procedures). Therefore, Plaintiffs' taking claim under the Fifth Amendment of the United States Constitution is premature, unripe for judicial review and must be dismissed.

Accordingly, the Court concludes Plaintiffs' Section 1983 claims premised on the Fourteenth Amendment's equal protection and due process clauses and the Fifth Amendment's takings clause (Counts One, Two and Three) fail to state a claim and therefore are dismissed pursuant to Fed. R.Civ.P. 12(b)(6).[4]

### Supplemental State Law Claims under Connecticut State Constitution and for Breach of Contract

Having dismissed each of the federal claims on which original jurisdiction could be based, the Court exercises its discretion and declines to retain supplemental jurisdiction over plaintiff's state law claims arising under the Connecticut Constitution (Counts One, Two and Three) or claiming a breach of the settlement agreement (Count Five) pursuant to 28 U.S.C. § 1367(c)(3) (A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original juris-

---

4. Although the Amended Complaint does not specify which claims relate to Deborah Katz alone or both Deborah and Anita Katz, and at oral argument, Plaintiffs' counsel would not concede that Anita Katz's claim is limited to the due process claim based on her interest in her good name or reputation or claimed interest in SBA tax expenditures articulated in

Count Two, the Court concludes Anita Katz's equal protection and taking claims fail for the additional reason that there is no allegation in the complaint that she has any protectable interest in 101 Second Avenue or that the SBA's conduct has impacted the property she owns at 28 Stannard Drive.

diction"). Plaintiffs point to no circumstances that would justify the exercise of supplemental jurisdiction now that the federal claims have been dismissed. These state law claims are accordingly dismissed without prejudice.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss [Doc. # 39] is GRANTED.

IT IS SO ORDERED.