**David GAVLAK and Hillside Springs Farm, Inc. Plaintiffs,**

v.

**TOWN OF SOMERS and Somers Zoning Board of Appeals Defendants.**

**No. 302CV1410(GLG).**

United States District Court, D. Connecticut.

June 13, 2003.

---

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiffs.

James Newhall Tallberg, Updike, Kelly & Spellacy, P.C., Hartford, CT, for Defendants.

## *OPINION*

GOETTEL, District Judge.

The plaintiffs, David Gavlak and Hillside Springs Farm, Inc. (Hillside), have brought this federal action against the defendants, Town of Somers (Town) and the Somers Zoning Board of Appeals (Board), claiming that the defendants deprived

them of their property without just compensation under the Fifth and Fourteenth Amendments and violated their rights to Due Process and Equal Protection under the Fourteenth Amendment.[1] The defendants moved to dismiss **[Doc. 11]** the plaintiffs' complaint pursuant to Fed. R.Civ.P. 12(b)(1) and (6). We find that the plaintiffs' just compensation claim, based on a regulatory taking, is not ripe for adjudication and we dismiss it pursuant to Fed.R.Civ.P. 12(b)(1). As to the plaintiffs' remaining claims, we find them sufficient to withstand the defendants' motion to dismiss.

## I. Standard: 12(b)(1) and (6) Motions to Dismiss

Our standard for deciding a Rule 12(b)(6) motion is well settled.[2] We accept as true all of the allegations contained in the plaintiffs' well-pleaded complaint and draw all reasonable inferences in their favor. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Id.* The issue is whether the plaintiffs, as claimants, are entitled to offer evidence to support their claim, not whether they ultimately will prevail. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. *Piorkowski v. Parziale*, No. 3:02CV00963(GLG), 2003 WL 21037353, at *1 (D.Conn. May 7, 2003). Stated otherwise, our task "is merely to assess the legal feasibility of the complaint." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal citation and quotation marks omitted).

## II. Background/Facts

The history of this dispute dates back to 1996 and is discussed in detail in the Connecticut Supreme Court's opinion in *Wood v. Zoning Bd. of Appeals of the Town of Somers*, 258 Conn. 691, 784 A.2d 354 (2001). David Gavlak owns real property in Somers, Connecticut, where he resides. Hillside is a spring water business that is owned and operated by Gavlak in Somers, Connecticut. The spring water used by Hillside flows from one of four natural springs located on a thirty-three-acre parcel of land that the plaintiffs lease from a larger, 200–acre tract of land known as the Wood Farm, which is located in Somers. Prior to 1991, the water collected from the leased property was stored and sold for the filling of swimming pools. Since 1991, the collected and stored spring water has been transported off the property to various bottling facilities and, ultimately, sold

---

1. The plaintiffs also claim violations of the Connecticut Constitution. We address the plaintiffs' claims solely on federal constitutional grounds because they have not alleged facts sufficient to invoke a separate analysis under the Connecticut Constitution. *See State v. Robert H.*, 71 Conn.App. 289, 298 n. 11, 802 A.2d 152, *cert. granted in part on other grounds*, 262 Conn. 913, 811 A.2d 1294 (2002); *see also State v. Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (providing tools for independent state constitutional analysis).

2. The distinctions between Rules 12(b)(1) and 12(b)(6) rarely have any practical consequences because the "standards for dismissal ... are substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citation omitted); *see also Moore v. PaineWebber, Inc.*, 189 F.3d 165, 178–79 (2d Cir.1999). *But see Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir.1994) (noting that the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof).

for human consumption.[3] The plaintiffs' operation of the spring water business continued until December 30, 1996, when the Somers zoning enforcement officer issued a letter to the plaintiffs. The letter advised the plaintiffs that the collection and storage of spring water on the subject property for transportation off that property is prohibited by Somers zoning regulations, and that such activity must be discontinued. The plaintiffs appealed the zoning officer's cease and desist order to the Board. *See* Conn. Gen.Stat. § 8–7. They claimed that their use of the subject property is a permitted use because it "falls within the scope of agriculture and/or farming." *Wood*, 258 Conn. at 694–95, 784 A.2d 354.

The Board held a public hearing regarding the plaintiffs' claim on April 10, 1997, during which the plaintiffs maintained that their collection of spring water for bottling and sale off the subject property is a permitted agricultural use. Alternatively, the plaintiffs claimed that their use of the "subject property to collect spring water constituted a legal nonconforming use inasmuch as water has been collected from the springs for several hundred years, long before any zoning regulations were in place." *Id.* at 695, 784 A.2d 354. The Board ruled against the plaintiffs and upheld the cease and desist order. The Board's ruling, however, was based solely on its determination that the plaintiffs' activities did not fall within the scope of

permitted agricultural uses within the meaning of the Somers Town Code § 214–4. The Board made no determination on the plaintiffs' nonconforming use claim.

The plaintiffs appealed the Board's decision to the trial court. *See* Conn. Gen. Stat. § 8–8(b). After a hearing, the trial court affirmed the Board's ruling regarding its determination that the plaintiffs' activities did not constitute permitted agricultural use. The trial court also concluded that the plaintiffs' use of the subject property did not constitute a legal nonconforming use, and rendered judgment dismissing the plaintiffs' appeal. *Wood*, 258 Conn. at 695–96, 784 A.2d 354.

Pursuant to Conn. Gen.Stat. § 8–8(*o*), the plaintiffs petitioned to appeal the trial court's judgment to the Appellate Court. The Connecticut Supreme Court transferred the appeal to itself. *See* Conn. Gen. Stat. § 51–199(c). The Connecticut Supreme Court held that the plaintiffs' use of the subject property did not constitute a permissible "agriculture" use under the Town's zoning regulations, and that the Board's determination in that regard was proper. The court held further, however, that because the Board never addressed and rendered a decision on the plaintiffs' nonconforming use claim in the first instance, it was improper for the trial court to issue a ruling on that claim. Consequently, the court reversed and remanded the case to the trial court with orders for it to remand the case to the Board for the

**3.** The trial court stated that the defendants argued the spring from which the water was drawn was used previously for "personal use on the premises and became a commercial activity in 1991, thereby creating an entirely new use for the spring water." *Wood v. Somers Zoning Bd. of Appeals*, No. CV 970063972S, 1999 WL 1013118, at *3 (Conn.Super.Ct. Oct. 29, 1999), *rev'd in part by Wood*, 258 Conn. 691, 784 A.2d 354. The Connecticut Supreme Court stated, "between 1991 and 1996, the spring water that Hillside

collected had been used in swimming pools. Since 1996, however, the water has been used strictly for human consumption." *Wood*, 258 Conn. at 694 n. 4, 784 A.2d 354. Because the plaintiffs allege to have engaged in the disputed use since 1991, which is prior to the enactment of the zoning amendments, and not 1996, which is subsequent to the enactment of the zoning amendments, we assume the plaintiffs' allegations to be true, even in light of what appears to be a discrepancy in the statement of facts between the two state courts.

limited purpose of determining whether the plaintiffs' use of the subject property constituted a non-conforming use. *Wood,* 258 Conn. at 695–96, 709, 784 A.2d 354.

The Board considered the issue on February 12, March 12 and April 11 of 2002. Despite the plaintiffs' request to be heard on the matter, the Board concluded, without a hearing afforded them, that their use of the subject property did not constitute a nonconforming use.[4] Consequently, the Board upheld the issuance of the cease and desist order on that basis. This law suit followed, challenging the Board's actions on federal constitutional grounds. Additional facts will be set forth as necessary.

## III. Discussion

The plaintiffs' claims are made via 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiffs "must allege facts indicating that some official action has caused [them] to be deprived of [their] constitutional rights" and that such deprivation of rights has caused them to suffer injury. *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1750, 155 L.Ed.2d 512 (2003).

### A. Ripeness

The plaintiffs contend that the defendants deprived them of their property without just compensation in violation of the Fifth Amendment. They also claim a denial of substantive and procedural due process rights, as well as a denial of their equal protection rights. The defendants have not challenged the ripeness of these claims. We, nevertheless, address them to determine if they are ripe for adjudication, which implicates federal subject matter jurisdiction. *United States v. Quinones,*

313 F.3d 49, 58 (2d Cir.2002). "Because subject matter jurisdiction remains 'an unwaivable *sine qua non* for the exercise of federal judicial power,' *Herrick Co., Inc. v. SCS Communications, Inc.,* 251 F.3d 315, 321 (2d Cir.2001), it is this Court's obligation to address, *sua sponte,* this threshold question when it appears from the complaint that it [might be] lacking." *Chiu v. Au,* No.3:02cv2081, 2003 WL 21003441, at *1 (D.Conn. Mar. 28, 2003); *see also, Jacobs v. Patent Enforcement Fund, Inc.,* 230 F.3d 565, 567 (2d Cir. 2000).

### 1. *Takings and Due Process Claims*

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citation omitted). The Takings Clause, which clearly applies to instances in which the government encroaches on or occupies land, *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 427, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), also recognizes regulations that, absent encroachment or occupation, go "too far". *Palazzolo,* 533 U.S. at 617, 121 S.Ct. 2448.

In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the United States Supreme Court set forth a two-pronged test for assessing the ripeness of takings-type claims. Under the first prong, a claim is not ripe for adjudication if the government entity charged with enforcing the zoning regulations at issue

---

4. The plaintiffs allege that they made a written request to the Board to be heard on the matter but were denied that opportunity.

has not rendered a "final decision" regarding the application of the regulation to the property at issue. *Id.* at 186, 105 S.Ct. 3108. Under the second prong, "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108; *see also Webster v. Moquin,* 175 F.Supp.2d 315, 323–24 (D.Conn.2001); *Katz v. Stannard Beach Ass'n,* 95 F.Supp.2d 90, 98 (D.Conn. 2000). Further, if no procedures exist as a means for obtaining just compensation, then it is up to the plaintiff to plead that such remedy did not exist. *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 147 (1st Cir.2002).

■ The Second Circuit recognized in *Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 95 (2d Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993), that a plaintiff may assert two distinct substantive due process claims: one alleging an unconstitutional regulatory taking without just compensation and another alleging that a zoning board's decisions were arbitrary and capricious. The test to determine the viability of an alleged regulatory taking is one and the same with that of a substantive due process claim under a theory that a zoning board has "gone too far," and is subject to both prongs of the *Williamson* ripeness test. *Id.* at 96, 96 n. 7; *see Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 380 (2d Cir.1995) (holding the *Williamson* ripeness test applies to both physical and regulatory takings), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). In contrast, the separate and distinct substantive due process claim of arbitrary and capri-

cious or illegitimate and irrational decisions on the part of a zoning board is subject only to the first, final decision, prong of the *Williamson* ripeness test, and not subject to the second prong. *Southview,* 980 F.2d at 97.

In light of the foregoing, it is clear the plaintiffs have not met the second prong of the *Williamson* test insofar as their takings and/or substantive due process claim based on a regulatory taking is concerned.[5] The plaintiffs have not pleaded any facts upon which this Court could infer that they utilized unsuccessfully any available state procedures to procure just compensation for the claimed taking. *See Williamson,* 473 U.S. at 194–95, 105 S.Ct. 3108; *Sproul v. City of Wooster,* 840 F.2d 1267, 1270 (6th Cir.1988). Moreover, they have not pleaded that such procedures do not exist. Had the plaintiffs made such an allegation, we would be compelled, nevertheless, to dismiss their takings and/or substantive due process claim based on a regulatory taking, because the Connecticut Constitution provides what the Second Circuit describes as "a straightforward takings clause" upon which to base a prayer for compensation. *Villager Pond,* 56 F.3d at 380 (holding that even if a specific claim for compensation has yet to be presented to the courts, the plaintiff must still look to the state for compensation before a takings claim will lie). Accordingly, the plaintiffs' taking and/or substantive due process claim based on a regulatory taking is not ripe and is, therefore, dismissed for lack of subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1).

### 2. *Substantive Due Process: Arbitrary Government Decisions*

■ The plaintiffs' substantive due process claim based on arbitrary government

---

5. Because no facts exist to suggest that the alleged taking was one of encroachment or occupation, we assume the plaintiffs' takings claim is based on a regulatory taking in that the Board has gone "too far" in its decisions.

decision-making, however, satisfies the first prong of *Williamson* because the plaintiffs have alleged that the Board, which has the final word regarding the enforcement of the Somers zoning regulations, determined that the plaintiffs' use of the subject property did not constitute a nonconforming use. As a result, this claim is ripe for adjudication.

### 3. *Procedural Due Process*

■ Insofar as the plaintiffs' procedural due process claim is concerned, the Second Circuit has held that the *Williamson* ripeness test applies to such claims. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir.2002) (*citing Unity Ventures v. County of Lake*, 841 F.2d 770, 774–76 (7th Cir.1988), for the proposition that it applies to procedural due process claims). In *Dougherty*, the Second Circuit held that the plaintiff's procedural due process claim was not ripe for adjudication because he had not satisfied the first prong of *Williamson*. *Dougherty*, 282 F.3d at 87–89. That case, however, is distinguishable on the facts. In *Dougherty*, the plaintiff attempted to expand a nonconforming use and a cease and desist order was issued. The plaintiff's subsequent application was denied by the board on the ground that he had violated the town's regulation prohibiting the enlargement of a nonconforming dwelling. Thereafter, the plaintiff filed a federal claim without seeking a variance from the board's decision. Likewise in the *Unity Ventures* case, cited by *Dougherty*, that plaintiff had submitted to the applicable town agency proposed plans for the installation of sewer lines. Though the plaintiff's proposed plans were denied, he did not "make any effort to obtain a final, reviewable decision before any governmental entity on his application." *Unity Ventures* 841 F.2d at 775. In both cases, the plaintiffs could have taken additional steps to obtain the permit and/or approval sought. For instance, the plaintiff in *Dougherty* could have applied for a variance which would have allowed him to use his property in a productive manner. *See Dougherty*, 282 F.3d at 88–89. And, in *Unity Ventures*, the plaintiff could have sought review of the decision denying his proposals, but failed to do so. *See Unity Ventures*, 841 F.2d at 774–76.

Unlike the plaintiffs in *Dougherty* and *Unity Ventures*, the plaintiffs in this case have alleged the existence of a nonconforming use; they have not sought to expand one, nor have they submitted plans for the construction of any buildings or other infrastructure. Although a variance might be necessary to enlarge a nonconforming use, it is not the means by which to establish one. *See Taylor v. Zoning Bd. of Appeals of Town of Wallingford*, 65 Conn.App. 687, 693–94, 783 A.2d 526 (2001); *see also*, Conn. Gen.Stat. § 8–2(a) (stating in relevant part: municipal zoning "regulations shall not prohibit the continuance of any nonconforming use ... existing at the time of the adoption of such regulations"). At its most fundamental level, a nonconforming use is a vested property right in the State of Connecticut. *Beckish v. Planning & Zoning Comm'n*, 162 Conn. 11, 16, 291 A.2d 208 (1971); *see Taylor*, 65 Conn.App. at 693–94, 783 A.2d 526. Moreover, the plaintiffs allege that the Board deprived them of that right without a hearing.

In light of the fact that (1) the plaintiffs have alleged the existence of a nonconforming use, which, if established, is a vested property right in Connecticut and its legality in the first instance does not require a variance; *see Taylor*, 65 Conn. App. at 693–94, 783 A.2d 526; and, (2) the Board, which has the final say on land use decisions in the Town of Somers, held, without a hearing or explanation, that the

plaintiffs' use of the subject property did not constitute a nonconforming use, we hold that their procedural due process claim is ripe for adjudication.

### 4. *Equal Protection*

For the same reasons, the plaintiffs' equal protection claim, wherein they assert that the defendants' actions prior to and culminating with the finding that the plaintiffs' use of the subject property did not constitute a nonconforming use, is ripe for adjudication. *Southview,* 980 F.2d at 97; *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990) (stating, "[i]n evaluating the ripeness of due process or equal protection claims arising out of the application of land use regulations, we employ the same final decision requirement that applies to regulatory taking claims"), *cert. granted,* 523 U.S. 1045, 118 S.Ct. 1359, 140 L.Ed.2d 509 (1998), *aff'd,* 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

Having determined that subject matter jurisdiction is proper over the plaintiffs' substantive due process claim based on arbitrary government decision-making, their procedural due process claim, and their equal protection claim, we look now to see if they have alleged facts upon which relief can be granted.

### B. Failure to State a Claim Upon Which Relief Can Be Granted

### 1. *Due Process*

■ For a claimed violation of substantive due process to survive the defendants' motion to dismiss, the plaintiffs must demonstrate that (1) they have a constitutionally protectable property interest and (2) the defendants infringed that property interest in an arbitrary or irrational manner. *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 503 (2d Cir.2001).

The Constitution, of course, does not create any property interests. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Second Circuit has held that "[i]n almost all cases, the existence of a federally protectable property right is an issue of law for the court." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999).

■ The plaintiffs assert that their spring water operations "constitute[ ] a preexisting nonconforming use." (Comp. ¶ 12; see also Comp. ¶ 7.) Because we must assume the plaintiffs' factual allegations to be true, they have alleged properly the existence of constitutionally protectable property interest, namely, the maintenance of a preexisting nonconforming use. As stated earlier, under Connecticut law, zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." Conn. Gen.Stat. § 8–2(a). The continued use of a legally established nonconforming use is a "vested right" in Connecticut and is entitled to constitutional protection, and "any provision of a statute or ordinance which takes away that right in an unreasonable manner, or in a manner not grounded on the public welfare, is invalid." *See Petruzzi v. Zoning Bd. of Appeals,* 176 Conn. 479, 484–84, 408 A.2d 243 (1979); *Taylor,* 65 Conn.App. at 693, 783 A.2d 526; *see also Carbone v. Vigliotti,* 222 Conn. 216, 230, 610 A.2d 565 (1992); *Town of Darien v. Webb,* 115 Conn. 581, 586, 162 A. 690 (1932). Although the plaintiffs have alleged properly a violation of a protectable property interest, the question of

whether or not their alleged nonconforming use is "legally established" remains to be determined. *See Helicopter Assocs., Inc. v. City of Stamford,* 201 Conn. 700, 712, 519 A.2d 49 (1986) (discussing that a nonconforming is legally established when the use is lawful and in existence prior to the enactment of zoning regulations making the use nonconforming); *see also Cummings v. Tripp,* 204 Conn. 67, 91–92, 527 A.2d 230 (1987).

The second prong of establishing a legally sufficient substantive due process claim requires the plaintiffs to allege that the defendant's infringed the plaintiffs' protectable property interest in an arbitrary or irrational manner, which "may be found only when government acts with no legitimate reason for its decision." *See Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (citations and internal quotation marks omitted); *Harlen Assocs.,* 273 F.3d at 503; *see also Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999); *cf. Natale,* 170 F.3d at 263 (holding second prong of substantive due process test is satisfied when governmental actions are "so outrageously arbitrary as to be a gross abuse of governmental authority").

The plaintiffs allege that the defendants acted and "carried out a course of conduct, which continues to the present day, designed to obstruct, impede and destroy" their spring water business. (Comp.¶ 9.) In support of these allegations, the plaintiffs claim that various town officials, based on Gavlak's refusal to make a zoning official part of the spring water business, demonstrated this desire to intentionally destroy the business by stating that they wanted to (1) "tak[e] care of the Gavlak situation," (2) determine "how the [plaintiffs'] spring water operation could be permanently stopped" and, (3) "make sure the Gavlak situation was shut down," (Comp. ¶ 9.), which resulted in the Town's amendment of its zoning regulations in 1991. The culmination of the defendants' intent to destroy the plaintiffs' spring water business, as they allege, occurred following the trial court's remand to the Board to determine whether the plaintiffs' use ·of the property constituted a preexisting nonconforming use. Without a hearing, or any explanation, the Board determined it did not, and continued the cease and desist order. The Board's actions and decisions concerning the nonconforming use issue, as alleged, were illegitimate and irrational because they were manifestations of the Board's desire to destroy the plaintiffs' spring water business.

Because the plaintiffs have alleged the existence of a protectable property interest, and that the Board illegally infringed on that interest through actions that were precipitated by its predetermination to halt their spring water business, the plaintiffs have alleged facts sufficient for this claim to overcome the defendants' motion to dismiss.

### 2. *Procedural Due Process*

 The plaintiffs claim that the Board denied them procedural due process when it refused to hear them regarding their nonconforming use claim. The Supreme Court has established that "[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Depart. of Corrs. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted). To state a legally sufficient claim for a violation of procedural due process, the plaintiffs have to satisfy both prongs of the test. To satisfy the first prong, the plaintiffs must: (1) identify

the property right and (2) establish that governmental action with respect to that property right amounted to a deprivation. *See Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir.1989), *cert. denied*, 496 U.S. 941, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990). The second prong requires the plaintiffs to demonstrate that the deprivation occurred without due process. *Id.*

■ As we have stated already, the plaintiffs have satisfied the first prong by alleging the deprivation of a constitutionally protected property interest, namely, the maintenance of a nonconforming use. Further, they have alleged that the Board deprived them of that property interest via its continuation of the cease and desist order, which forbids the plaintiffs from engaging in the activities essential to the operation of their spring water business.

The second prong requires this Court to engage in a balancing test because "[d]ue process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). This balancing test requires us to weigh several factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127, 110 S.Ct. 975 (emphasis in original); *see also Small v.*

*Reno*, 127 F.Supp.2d 305, 320 (D.Conn. 2000).

Here, the plaintiffs have alleged that when the Board considered the nonconforming use claim, it did so without affording the plaintiffs the opportunity to be heard, despite their attempts to present evidence to the Board. Consequently, the plaintiffs have alleged properly a violation of procedural due process because the Board's decision deprived them of a property interest without a hearing. The absence of such an opportunity to be heard greatly enhanced the risk for an erroneous deprivation of the plaintiffs' property rights. Moreover, because we have only the complaint before us, we are not privy to any substitute procedures that might have served to protect the plaintiffs' rights in this case. Therefore, the plaintiffs' procedural due process claim withstands the defendants' challenge.

### 3. *Equal Protection*

The plaintiffs claim further that the defendants violated their rights to equal protection of the laws under the Fourteenth Amendment, as implemented by section 1983. The plaintiffs claim specifically that the defendants intentionally and irrationally acted to destroy their spring water business, and subjected them to disparate treatment in comparison with other businesses and zoning applicants. Because the plaintiffs have not alleged to be members of any protected class, we assume their equal protection claim to be based on a "class of one." *See Galligan v. Town of Manchester*, No. 3:01 CV 2092(GLG), 2003 WL 21146710, at *6 (D.Conn. May 19, 2003).

■ "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs.*, 273 F.3d at 499. The Supreme Court has reaffirmed recently the viability

of an equal protection claim brought by a "class of one." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *see also African Trade & Info. Ctr., Inc. v. Abromaitis,* 294 F.3d 355, 362–63 (2d Cir. 2002). To state such a claim, the plaintiffs must allege that the defendants intentionally treated them differently from others similarly situated and that no rational basis existed for the difference in treatment. *African Trade,* 294 F.3d at 362–63. *Olech* seems to have left open the question of whether malice or bad faith must be shown to state a valid "class of one" equal protection claim. *See Olech,* 528 U.S. at 564, 120 S.Ct. 1073; *Harlen Assocs.,* 273 F.3d at 499–500; *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001). Though the Second Circuit has not resolved that question, it "has made clear that a plaintiff challenging a zoning board's decision, at a minimum, would be required to show that the decision was 'irrational and wholly arbitrary', in other words, that there was 'no legitimate reason for its decision.'" *Zeigler v. Town of Kent,* 258 F.Supp.2d 49, 58 (D.Conn.2003) (*citing Harlen Assocs.,* 273 F.3d at 500). Our determination, however, is tempered by the policy of affording governmental decisions a strong presumption of validity, which directs us to uphold a governmental decision if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

 In April of 1990 and May of 1991, the plaintiffs applied for and received the necessary permits from the Somers Conservation Commission authorizing them to use tanker trucks to transport spring water off of the subject property. Around that time, however, George Boiservt, a zoning official, offered Gavlak "a sum of money to become a partner in his water business." (Comp.¶ 8.) Gavlak refused this offer. Subsequently, the plaintiffs allege that town officials "carried out a course of conduct, which continues to the present day, designed to obstruct, impede and destroy" the spring water business. (Comp. ¶ 9.) Such intent is evinced by the zoning officials' desire to determine "how the [plaintiffs'] spring water operation could be permanently stopped." (*Id.*)

Shortly following the commencement of their spring water operation in 1991, the plaintiffs claim that the defendants' intent to destroy their business prompted the Board to amend the Town's zoning regulations. The amended regulations made all uses of real property not expressly permitted to be prohibited. *Wood,* 258 Conn. at 694, 784 A.2d 354. The plaintiffs also assert that the Board's subsequent ruling, in the absence of any hearing, that the plaintiffs' use of the subject property did not constitute a preexisting nonconforming use, followed by its issuance of a cease and desist order, demonstrate that the Board's decisions were illegitimate and irrational.

Taking as true all of the allegations in the plaintiffs' complaint, we find that they have satisfied the requirements for instituting a legally sufficient "class of one" equal protection claim. First, they allege that the defendants intentionally "subjected [them] to disparate treatment compared to other businesses in the town and compared to other applicants for zoning permits." (Comp.¶ 23.) Second, the plaintiffs allege that the Board's intentional, disparate treatment of them was irrational and wholly arbitrary because it was based on a preconceived intent to destroy their spring water business, thereby rendering such treatment void of any legitimacy.

The defendants attempt to counter this claim with a conclusory remark only, which is located in a footnote in their initial brief

to this Court, wherein they claim that the plaintiffs' equal protection claim is "so vague and conclusory that it fails to state a claim upon which relief can be granted." (Defs.' Br. at 9 n. 1.) Following the plaintiffs' opposition to the motion before us, the defendants responded more fully in their reply brief wherein they claimed that there was a rational basis for their actions concerning the plaintiffs' water bottling operation, which is "best illustrated by the Connecticut Supreme Court's decision in ... [*Wood*], in which the Court rejected the [p]laintiffs' novel argument that their water bottling operation constitutes 'agriculture'." (Defs.' Rep. Br. at 3.) While it is clear that this Court's duty to determine whether the defendants have offered a rational basis for the difference in the defendants' treatment of the plaintiffs "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *Zeigler*, 258 F.Supp.2d at 58, they have offered no such basis. Although the defendants are correct that the court ruled in their favor regarding the Board's interpretation and application of what constitutes "agriculture" within the meaning of the zoning regulations, that ruling cannot be extended to validate constitutionally the Board's subsequent determination that the plaintiffs' business was not a preexisting nonconforming use.

We can find no reasonably conceivable basis for the Board's decisions in light of the facts before us. Moreover, the defendants have not asserted any legitimate basis for their determinations. Therefore, the plaintiffs' equal protection claim survives the defendants motion to dismiss. *See Russo v. City of Hartford*, 184 F.Supp.2d 169, 190 (D.Conn.2002).

## C. Statute of Limitations—Conn. Gen.Stat. § 52–577

The defendants claim further that the plaintiffs' section 1983 claims are barred by Conn. Gen.Stat. § 52–577, which states, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." State law, which sets forth the statute of limitations for tort suits, also supplies the limitations period for federal constitutional claims brought under section 1983. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002), *cert denied*, —— U.S. ——, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003); *Connolly v. McCall*, 254 F.3d 36, 40–41 (2d Cir.2001). Federal law, however, determines when a federal claim accrues. A claim is said to accrue when the plaintiff knows or has reason to know of the harm. *Connolly*, 254 F.3d at 41.

The plaintiffs claim that the defendants deprived them of their constitutional rights to due process and equal protection when the Board infringed on their protectable property interest with no legitimate reason and denied them the opportunity to be heard regarding the "nonconforming" use, and that they were subjected to disparate treatment in comparison to others similarly situated without a rational basis. The allegations in this regard, namely, (1) the Board's refusal to allow the plaintiffs to be heard, (2) its subsequent decision on the nonconforming use issue, and (3) the issuance of the cease and desist order, against the backdrop of the Board's intent to destroy the plaintiffs' business, all occurred in February, March and April of 2002, respectively. The plaintiffs' complaint cites that entire course of events as the basis for their federal constitutional claims. In other words, their federal claims accrued when these events occurred because they caused the plaintiffs to know of the harms they allege now. Consequently, the plaintiffs' claims have been brought well within the three-year statutory period for bringing the section 1983 claims now before this Court.

## D. Collateral Estoppel

 The defendants challenge further the plaintiffs' complaint based on the doctrine of collateral estoppel. Essentially, they claim that the plaintiffs are barred from bringing the present action because they are attempting to relitigate issues that have been decided already by the Connecticut Supreme Court. We disagree.

To afford a state court's judgment full faith and credit we are required to apply the state's principles of collateral estoppel. *Curry v. City of Syracuse*, 316 F.3d 324, 331 n. 4 (2d Cir.2003); *Town of Deerfield v. FCC*, 992 F.2d 420, 429 (2d Cir.1993).
Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding.

An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent ac-

tion. Findings on nonessential issues usually have the characteristics of dicta.[6] *Carnemolla v. Walsh*, 75 Conn.App. 319, 325–26, 815 A.2d 1251, *cert. denied*, 263 Conn. 913, 821 A.2d 768 (2003) (internal citations and quotation marks omitted).

The defendants argue that the court's determination in *Wood*, which validated the Board's finding that the collection, storage and transportation of spring water off of the subject premises did not constitute "agriculture," presents the "identical issue of whether the [p]laintiffs have a clear entitlement to a permit." (Defs.' Mem. at 8.) The defendants are incorrect in their assertion. The court's determination in that regard is separate and distinct from the claim and attendant issues of whether the plaintiffs' business operations constitute a preexisting nonconforming use. In upholding the Board's judgment, the court's ruling hinged on the Board's interpretation and application of what constitutes "agriculture" under the Town's zoning regulations. Nowhere in the court's opinion, or the trial court's opinion, is there a discussion of whether the plaintiffs had some sort of entitlement to any permit, because if their use of the subject property was deemed to be agricultural in nature, the plaintiffs would not have needed a permit to engage in those activities. *See generally Wood*, 258 Conn. at 691–96, 784 A.2d 354; *Wood v. Somers Zoning Bd. of Appeals*, No. CV 970063972S, 1999 WL 1013118, *1–6 (Conn.Super.Ct. Oct. 29, 1999), *rev'd in part by Wood*, 258 Conn. 691, 784 A.2d 354.

The plaintiffs are clearly estopped from relitigating the claim that their operations fall properly within the scope of "agricul-

---

**6.** Though largely abandoned, we note that the mutuality rule, which operates to preclude a claim of collateral estoppel by one party against another in a subsequent proceeding when the parties in a prior proceeding were not actually adverse, is not an issue here. *Carnemolla v. Walsh*, 75 Conn.App. 319, 326, 815 A.2d 1251, *cert. denied*, 263 Conn. 913, 821 A.2d 768 (2003).

ture," as set forth in the Town's zoning regulations. They are not estopped, however, from litigating the claim that their use of the subject property constitutes a legally established, preexisting nonconforming use. While it is indisputable that the trial court ruled already on that claim, the court held explicitly that the trial court did so improperly because the Board had failed to address it in the first instance. The court stated, "[t]he [b]oard made no factual findings concerning the plaintiffs' nonconforming use claim and rendered no decision on that claim. In the absence of any such action by the Board, the record before the trial court was inadequate for its review of the plaintiffs' nonconforming use claim." *Wood,* 258 Conn. at 709, 784 A.2d 354. Moreover, the fact that the plaintiffs "addressed the merits of that claim in support of their alternative argument does not constitute a waiver of their primary argument, namely, that the board was required to address [their] nonconforming use claim in the first instance." *Id.* at 708, 784 A.2d 354. Consequently, the court reversed the trial court's ruling with orders for it to remand the case to the Board for its determination of that claim.

Because the claim before this Court now involves issues separate and distinct from those litigated in the prior state court proceedings, collateral estoppel does not bar the issues relevant to the plaintiffs' nonconforming use claim.

## E. Municipal Liability Under Section 1983

■ The defendants make an additional challenge to the plaintiffs' claims by arguing that the municipality may not be held liable in this case under any set of facts based on the complaint. While it is clear that a municipality may not be held liable on a theory of *respondeat superior*

based on a section 1983 claim, *Jeffes v. Barnes,* 208 F.3d 49, 56 (2d Cir.), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000), "[i]t may, however, be held liable if the conduct that caused the unconstitutional deprivation was undertaken pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 56–57 (internal citations and quotation marks omitted). Liability may attach to a municipality for the unconstitutional actions of its employees if a plaintiff pleads and proves three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) (citations omitted). Further, "[t]he mere invocation of the 'pattern' or 'plan' [will] not suffice without this causal link." *Id.* at 397.

The plaintiffs are not required to set out detailed facts in their complaint and, we state again, a claim will survive dismissal "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Id.*

The plaintiffs allege that it was the policy or plan of the Board to destroy their spring water business. The causal link requirement has been met in that the plaintiffs allege that the defendants' plan of destroying the plaintiffs' business manifested itself through the Board's decisions regarding the plaintiffs' use of the subject property. Those decisions resulted ultimately in the issuance and continuation of the cease and desist order, which rendered the plaintiffs' business operations illegal, and deprived the plaintiffs of their consti-

tutional rights. At this stage, therefore, the plaintiffs have alleged facts that could serve to hold the municipality liable.

## IV. Conclusion

Because the complaint contains allegations sufficient to state claims upon which relief can be granted, the defendants' motion to dismiss **[Doc.11]** is **DENIED** as to the plaintiffs' (1) substantive due process claim based on illegitimate and irrational government decision-making, (2) procedural due process claim and, (3) "class of one" equal protection claim. We **DISMISS**, *sua sponte*, the plaintiffs' takings and/or substantive due process claim based on a regulatory taking on ripeness grounds. We note further that, although the complaint does not seem to raise any claims or issues regarding the state court determinations of whether the plaintiffs' use of the subject property constituted a permitted use under the zoning regulations, to the extent that plaintiffs wish to relitigate that claim or any issues attendant thereto, they are barred from doing so under the doctrines of res judicata and collateral estoppel. Having denied the defendants' motion to dismiss as to certain of the plaintiffs' federal section 1983 claims, we also deny the defendants' motion to dismiss for lack of subject matter jurisdiction except to the extent noted above.

**SO ORDERED.**